Argued and submitted May 28, affirmed in part; reversed in part; remanded November 24, 1982, reconsideration denied January 7, petition for review denied February 23, 1983 (294 Or 536)

In the Matter of Jesse Sterling
Cochell, a Child.

STATE ex rel JUVENILE DEPARTMENT
OF MARION COUNTY,
*Respondent,*

*v.*

COCHELL,
*Appellant.*

(No. 18,379, CA A23010)

653 P2d 1006

J. P. Harris, II, Salem, argued the cause and filed the brief for appellant.

Virginia L. Linder, Assistant Attorney General, Salem, argued the cause for respondent. On the brief were Dave Frohnmayer, Attorney General, William F. Gary, Solicitor General, and Stephen F. Peifer, Assistant Attorney General, Salem.

Before Thornton, Presiding Judge, and Van Hoomissen and Rossman, Judges.

THORNTON, P. J.

Van Hoomissen, J., concurring in part; dissenting in part.

## THORNTON, P. J.

Defendant appeals from an order of commitment to juvenile training school. He was found to have committed acts, namely burglary and theft, which if committed by an adult would constitute violations of the criminal law. *See* ORS 419.476(1)(a). He contends that the order should be reversed because he was entitled to *Miranda* warnings before being questioned by a police detective. The issue is whether defendant was in custody for the purposes of *Miranda* at the time of the questioning. We review *de novo,* ORS 419.561(4), and affirm the juvenile court's finding that defendant was not in custody.

At about 4:30 p.m. on August 17, 1981, detective Boutwell arrived at the scene of a shooting at an apartment complex.[1] Boutwell had been told that a male juvenile had been shot and was in terminal condition. He had been advised also that defendant, a 13-year-old, was a possible suspect. When he arrived, Boutwell did not know whether the shooting was accidental or not. He testified: "At that time they didn't know if it was accidental or what it was. It was being investigated as an accidental shooting or maybe a criminal shooting." Boutwell did not know that defendant had been involved in a burglary earlier that day.

Boutwell found defendant in another apartment in the complex. He was crying and quite upset. Boutwell and others helped to calm him. Boutwell was able to talk to him after about 15 minutes. Defendant told Boutwell that he had found a gun in a plastic bag earlier in the day while riding his bike and had taken it to the victim's residence to show him. Boutwell asked defendant if he would voluntarily go with him to the area where defendant said he had found the gun. Defendant agreed to do so.

Defendant rode with Boutwell to an area a few blocks from the apartment complex. Although defendant indicated that that was where he had found the gun,

---

[1] The petition alleged that defendant committed burglary and criminally negligent homicide. Defendant requested that the hearing be bifurcated, and the burglary charge was heard first. The motion to suppress based on *Miranda* was made during the hearing on the burglary charge. The criminally negligent homicide charge was eventually dismissed. We, therefore, take the facts as developed in the burglary portion of the hearing.

Boutwell found no bicycle tracks or footprints of any kind or the plastic bag defendant said he found the gun in. Boutwell and defendant returned to the apartment complex. Boutwell asked defendant to remain seated in the patrol car. He then talked with some of the other officers on the scene and was told that the gun might have been taken in a burglary. On the basis of the discussions with the other officers and defendant's unsubstantiated story about finding the gun, Boutwell determined that defendant was a suspect in either a theft or burglary. He returned to the police car and advised defendant of his *Miranda* rights. After indicating that he understood his rights, defendant admitted that he had stolen the gun in a burglary of a residence about three blocks away. Several additional items of stolen property were also found in defendant's apartment. He was taken to a nearby juvenile detention home, where he was readvised of his *Miranda* rights. He gave Boutwell a three-page signed statement admitting his participation in the burglary and identifying the items taken.

At his hearing, defendant argued that the inculpatory statements already mentioned, which were made by him before the *Miranda* warnings were given, should be suppressed and that the later admissions were the "fruit of the illegal police conduct" and should also be suppressed. On appeal, he argues that because he was a suspect in the shooting at the time Detective Boutwell arrived, he was not free to leave the scene and was therefore in custody for the purposes of *Miranda*. He contends that he should have been given the warnings before questioning and that none of the statements he made before or after the warnings were given should be considered. He does not contend that his statements were coerced or otherwise the product of an overborne will. *See Malloy v. Hogan,* 378 US 1, 84 S Ct 1489, 12 L Ed 2d 653 (1964).

■ *Miranda* warnings are required only when there has been such a restriction on a person's freedom as to render him "in custody." *Oregon v. Mathiason,* 429 US 492, 495, 97 S Ct 711, 50 L Ed 2d 714 (1977). Custody can result from actual custody in the form of arrest or from deprivation of freedom of action in a significant way. *Oregon v. Mathiason, supra; Miranda v. Arizona,* 384 US 436, 444,

86 S Ct 1602, 16 L Ed 2d 694 (1966); *State v. Roberti,* 293 Or 59, 644 P2d 1104, 293 Or 236, 646 P2d 1341 (1982). In the present case, there is no evidence as to what defendant thought during the questioning by Boutwell, because defendant did not testify. Boutwell testified that he had been unaware of the burglary during the preliminary questioning before giving the *Miranda* warnings and that he did not know whether the shooting had been accidental or not. He also testified that during the questioning defendant was not in custody and was free to walk away at any time. Boutwell also testified that he had lacked probable cause to arrest defendant for any crime during the initial questioning. *See State ex rel Juv. Dept. v. Sanders,* 56 Or App 724, 725, 643 P2d 384 (1982). There is no evidence that defendant was held under any physical restraint. *State ex rel Juv. Dept. v. Sanders, supra,* 56 Or App at 728. Boutwell testified that defendant voluntarily accompanied him to the area where defendant said that he had found the gun.

Defendant emphasized at trial and on appeal that he was told to remain in Boutwell's patrol car when they returned to the apartment complex. Even if at that point defendant could be said to be "in custody" for purposes of *Miranda,* that finding is not dispositive since defendant made no statements to Boutwell after he was told to remain in the patrol car and before the *Miranda* warnings. It was only after Boutwell had returned to the patrol car and advised him of his rights that defendant made further admissions.

Defendant stresses the fact that he was a "focal suspect" during the pre-advice questioning. As stated above, he was suspected to have shot the victim, but there was no indication whether the shooting was accidental or not. In addition, Boutwell had no knowledge of the burglary and could not have suspected that defendant had participated in it. As the Oregon Supreme Court noted in *State v. Fields,* 291 Or 872, 876, 635 P2d 376 (1981), quoting from *Oregon v. Mathiason, supra:*

" ' * * * Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not

required to administer *Miranda* warnings to everyone whom they question. * * *' "

We hold that defendant was not in custody and that he was not otherwise deprived of his freedom of action to require the giving of *Miranda* warnings. Because defendant was not in custody, there could be no taint under *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

Lastly, although not raised by defendant below or on appeal, we note from our review of the record that the amended petition did not allege theft. The only violations of the law alleged were burglary in the first degree and criminally negligent homicide. ORS 419.500(1) provides that the court, on motion of an interested party or on its own motion, may at any time direct that the petition be amended. No such motion was made. Accordingly, while we affirm the finding of jurisdiction, the finding that defendant committed theft in the second degree is vacated. Defendant is within the jurisdiction of the court for his involvement in the burglary.

Affirmed as to jurisdiction on burglary charge; reversed as to jurisdiction on theft charge; remanded for reconsideration of disposition.

**VAN HOOMISSEN, J.,** concurring in part and dissenting in part.

The majority states that the issue is whether a 13-year-old child was in custody for *Miranda* purposes at the time he was questioned. That frames the issue too narrowly.

*Miranda* speaks not only to questioning when a person is in actual custody, but also to questioning when a person is in any significant way deprived of his freedom by police action. *Miranda v. Arizona,* 384 US 436, 444, 447-48, 86 S Ct 1602, 16 L Ed 2d 694 (1966); *see also State v. Roberti,* 293 Or 59, 644 P2d 1104, 293 Or 236, 646 P2d 1341 (1982). The state has the burden of proof on that question. *State v. Wheeler,* 43 Or App 875, 880, 604 P2d 449 (1979).

About 4:30 p.m., on August 17, 1981, the police were notified that there had been a burglary at a residence,

during which a. 22 pistol had been stolen. Deputy Cornforth investigated that burglary. About the same time, Detective Boutwell was assigned to investigate what had been described to him by police sources as being "a criminal negligent homicide or at least a murder." When Boutwell arrived at the scene of the shooting, he was not yet aware of the burglary. He was informed by other officers that a juvenile had been shot, that the wound would probably be fatal, that Jesse Cochell was responsible for the shooting and that it was being investigated as accidental "or maybe a criminal shooting."

Within minutes, Boutwell found Jesse in a nearby apartment, "crying, hysterical [and] upset." Arlene Wilson, a witness to the shooting, testified that, immediately after the shooting, Jesse was "in shock" and that he appeared "terrified." Boutwell remained in the apartment while fire department personnel tried to comfort Jesse. After about 15 minutes, Boutwell engaged him in a conversation about the shooting. Before questioning him, Boutwell did not advise him of his *Miranda* rights or that he was not required to answer Boutwell's questions; nor did he advise him that he was not under arrest or that he was free to leave the apartment. No parent or friend was with Jesse at the time.

In response to Boutwell's interrogation, Jesse admitted the shooting. He also stated that he had found the gun in a plastic bag and that it went off accidentally as he was showing it to the victim. Boutwell asked Jesse where he had found the gun. He stated that he had found it in some bushes. Boutwell asked if he would show him exactly where he had found the gun. Boutwell and Jesse then drove to a place where he said that he had found the gun. Boutwell testified that at that point Jesse was a focal suspect in his investigation but that it was not yet a *criminal* investigation.

Boutwell searched the area. He could not find a plastic bag or other evidence to corroborate the story. Boutwell testified that he did not believe what Jesse had told him. He then returned with Jesse to the scene of the shooting where he instructed him "to remain seated in the patrol unit of Deputy Cornforth." Boutwell testified that he

did that "to separate [Jesse] from his parents and other people that were concerned around there." Boutwell then went inside and talked to the officers investigating the shooting. By then he had determined that Jesse was a suspect in either a burglary or theft. He then returned outside and advised him of his *Miranda* rights. Jesse then admitted burglarizing the residence and the theft of the gun. Boutwell transported him to the juvenile detention facility, and he was subsequently named in a delinquency petition. ORS 419.476(1)(a).

Jesse challenges the admissibility of his statements made both before he was advised of his *Miranda* rights *and* those made after the warnings. I conclude that Jesse was in custody and that his statements made before the *Miranda* warnings were given were therefore inadmissible.

In *State v. Paz*, 31 Or App 851, 572 P2d 1036 (1977), *rev den* 282 Or 189 (1978), we said that, in making determinations of whether a defendant was "in custody" for the purposes of *Miranda*, we have looked to at least three specific circumstances surrounding a defendant's interrogation:

> "First * * * whether the defendant could have left the scene of the interrogation voluntarily. * * *

> "Second * * * whether the defendant was questioned by the police as a suspect or merely as a witness. * * *

> "Finally * * * whether a defendant freely and voluntarily accompanied police to the place of his questioning. * * *" 31 Or App at 860.

Here, the first *Paz* factor clearly favors Jesse. Would a reasonable person in his position conclude that he was free to leave?[1] The trial judge did not think so. Boutwell testified:

> "MR. HARRIS: Had the child asked you for permission to walk home and had you asked him no questions you would not have let him go, would you have? Because of this killing?

---

[1] Is the test what a reasonable "person" would have believed or what a reasonable 13-year-old would have believed? I would hold that not even a reasonable *adult* would have believed that he was free to leave under the circumstances here.

"DETECTIVE BOUTWELL: I only wanted from him, was a statement from him as to what he knew of or his involvement.

"MR. HARRIS: Well, despite what you wanted from him, he was not free to leave because he was the focal suspect, correct?

"DETECTIVE BOUTWELL: He was free to walk away any time.

"MR. HARRIS: I find that to be totally uncreditable.

"THE COURT: *Well, I agree with you,* but the officer has a right to stop somebody and get a statement before they go, but that does not make them * * * that does not make it custodial." (Emphasis supplied.)

It is inconceivable to me that Boutwell would have let Jesse leave the area before he had completed his investigation. The record shows that at the time Boutwell questioned him, Jesse was a ward of the juvenile court on probation to the juvenile department for theft. It defies common sense to conclude that, under these circumstances, he would have believed that he was free to leave.

The second *Paz* factor also favors Jesse. There is no argument on this point: Boutwell testified that he was questioned as a suspect.

The third *Paz* factor, whether a person freely and voluntarily accompanied the police to the place of his questioning, does not appear to be relevant here. Boutwell found Jesse in an apartment near the scene of the shooting. The record does not disclose whose apartment it was or why he was there. Suffice it to say that Boutwell came to the apartment and that Jesse never left Boutwell's custody thereafter until he was delivered to the juvenile detention facility.

The authorities cited by the majority are distinguishable, and they do not support the majority's conclusion. In *Oregon v. Mathiason,* 429 US 492, 97 S Ct 711, 50 L Ed 2d 714 (1977), the defendant, an adult parolee, came voluntarily to a police station where he was immediately informed that he was not under arrest. After thirty minutes, he left the police station without hindrance. Furthermore, in quoting from *Mathiason,* the majority has omitted

from its quotation the following language found in the same paragraph:

" * * * *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." 429 US at 495. (Emphasis in original.)

In *State v. Fields,* 291 Or 872, 635 P2d 376 (1981), the defendant, an adult probationer, was requested by his probation officer to accompany him to the probation office where he was questioned by the police. Before questioning the defendant, the police made it clear to him that he was not under arrest and that he was not required to answer any questions. In *State ex rel Juv. Dept. v. Sanders,* 56 Or App 724, 728, 643 P2d 384 (1982), we held that the police "had sufficient reason to stop [the child] and make a reasonable inquiry" pursuant to ORS 131.615(1)[2] and ORS 419.710.[3] The state does not rely on those statutes here.

I would conclude that Jesse was significantly deprived of his freedom by police action at the time he was initially interrogated by Detective Boutwell. He was "in custody" for *Miranda* purposes. *State v. Paz, supra.* Therefore, his *pre-Miranda* statements to detective Boutwell should not have been received in evidence.

Even if the *pre-Miranda* statements were inadmissible, that fact is not dispositive of the question whether

---

[2] ORS 131.615(1) provides:

"A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

[3] ORS 419.710 provides:

"No minor shall be in or upon any street, highway, park, alley or other public place between the hours of 12 midnight and 4 a.m. of the following morning, unless:

"(1) Such minor is accompanied by a parent, guardian or other person 18 years of age or over and authorized by the parent or by law to have care and custody of the minor;

"(2) Such minor is then engaged in a lawful pursuit or activity which requires his presence in such public places during the hours specified in this section; or

"(3) The minor is emancipated pursuant to ORS 109.550 to 109.565."

statements made after the giving of the warnings must be suppressed. The state does not rely on any of three commonly advanced exceptions to the exclusionary rule — the independent source, inevitable discovery or attenuation doctrines. In light of the totality of the circumstances, however, I would conclude that Jesse's *post-Miranda* statements are likewise inadmissible. *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963); *United States v. Bayer,* 331 US 532, 67 S Ct 1394, 91 L Ed 1654 (1947); *State v. Jones,* 248 Or 428, 431-32, 435 P2d 317 (1967).

Having concluded that all of Jesse's statements should have been suppressed, I would then find on *de novo* review[4] that there was insufficient evidence to sustain the state's burden of proof beyond a reasonable doubt and would therefore reverse.[5]

I concur as to the theft finding and the remand for reconsideration of disposition.

---

[4] The propriety of *de novo* review, ORS 419.561(4), in juvenile delinquency cases is debatable.

[5] That the state has failed to establish jurisdiction on the basis of the burglary does not mean that the juvenile court could not find jurisdiction on some other basis and pursuant to a new petition. *See, e.g.,* ORS 419.476(1)(b) (beyond control of parents); ORS 419.476(1)(c) (behavior, condition or circumstances); ORS 419.476(1)(e) (care, guidance and protection necessary for well-being); ORS 419.476(1)(f) (runaway). The record also indicates that Jesse was on probation to the Juvenile Department for theft. After finding that it has jurisdiction on any basis, the juvenile court would be empowered to enter an appropriate dispositional order, thus meeting the needs of the child, family and society.