Argued and submitted May 13, 1988, order modified; affirmed as modified May 10, reconsideration denied June 23, petition for review denied August 29, 1989

(308 Or 315)

In the Matter of Samantha Wright, Sean Wright, Travis Wright, and Joseph Wright, Children.

## STATE ex rel JUVENILE DEPARTMENT OF MULTNOMAH COUNTY,
*Appellant,*

*v.*

## GATES et al,
*Respondents.*

(88,739; CA A43598)

774 P2d 484

Linda DeVries Grimms, Assistant Attorney General, Salem, argued the cause for appellant. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Martin W. Reeves, Portland, argued the cause for respondent Donna Gates, also known as Donna Wright. With him on the brief was Reeves & Kahn, Portland.

No appearance for respondent Leroy F. Wright, Jr.

Clint A. Lonergan, Portland, argued the cause for respondents Samantha Wright, Sean Wright, Travis Wright and Joseph Wright, children. With him on the brief was Richard L. Lonergan, Portland.

Before Richardson, Presiding Judge, and Joseph, Chief Judge, and Deits, Judge.

JOSEPH, C. J.

## JOSEPH, C. J.

This juvenile court proceeding involves the four children of Donna Gates (mother) and Leroy Wright (father):[1] Sean, Travis, Samantha and Joseph. In March, 1984, petitions were filed in Crook County seeking to adjudicate that Sean and Travis were in the jurisdiction of the court under ORS 419.482. In September, 1984, the Crook County juvenile court entered an "interlocutory" order, finding, *inter alia,* that father had sexually mistreated the children and that the court was not certain that mother was able to protect the best interests of the children. On the basis of those findings, the court held that the children were within its jurisdiction and continued the case for disposition. On December 5, 1984, the court entered a second order making Sean and Travis wards of the court and leaving them in the custody of mother.

The December 5 order also forbade father from having any contact with the children until further order of the court. Despite that, the parents took Sean and Travis from Crook County to Portland, where authorities found them in 1986. In February, 1986, Sean and Travis were placed in foster care. Samantha[2] was placed in foster care in July, 1986.[3] At a review hearing, ORS 419.529, the parents appeared and did not deny violating the court order. The case was transferred from Crook County to Multnomah County in August, 1986.

In October, 1986, mother filed a petition for a review hearing. In November, the state filed a petition to establish jurisdiction over Samantha and Joseph.[4] A consolidated hearing, lasting approximately 80 hours, was held, during which the trial judge heard testimony about the events concerning the original petitions in Crook County, as well as later events.[5]

---

[1] Mother and father have lived together since 1980. Father is still married to a wife who lives in California.

[2] Samantha and Joseph were born after the Crook County proceeding.

[3] CSD attempted to take Joseph away from his parents shortly after his 1987 birth, but the trial court ordered that he stay with mother.

[4] The petition was originally filed for the "unborn baby" Joseph and was amended after his birth.

[5] The record amply supports the statement by counsel for the children on appeal that the unyielding attitude of both father and the state so polarized the situation that the ultimate purpose of the proceeding, to protect the best interests of the children, was lost sight of. Almost no issue was undisputed, and the trial judge's characterization of the testimony as a "threnody" is an inadequate euphemism.

The trial judge stated that there was something "funny" about father but entered an order finding that the state had failed to prove "any relevant allegation not admitted by [the parents]." He concluded, nonetheless, that the childrens' conditions and circumstances required jurisdiction. He then orally stated that he would amend the allegations of the petition, but he never did. He gave the parents physical custody of the children. The state appeals.

■    We first address whether we have jurisdiction, although the issue has not been raised by the parties. *Ackerley v. Mt. Hood Comm. College,* 51 Or App 801, 804, 627 P2d 487, *rev den* 291 Or 309 (1981). As the jurisdictional basis for its appeal, the state cites ORS 419.561(1):

> "Except as provided in ORS 419.578, any person whose right or duties are adversely affected by a final order of the juvenile court may appeal therefrom. An appeal from a circuit court shall be taken to the Court of Appeals, and an appeal from a county court shall be taken to the circuit court."

However, ORS 419.561(6) provides:

> "The state may take an appeal from the order of a juvenile court judge or referee from:
>
> "(a)   An order made prior to an adjudicatory hearing dismissing or setting aside a delinquency petition;
>
> "(b)   An order made after an adjudicatory hearing in which the juvenile is found to be within the jurisdiction of the court, setting aside the petition for delinquency;
>
> "(c)   An order made prior to an adjudicatory hearing suppressing or limiting evidence or refusing to suppress or limit evidence; or
>
> "(d)   An order made prior to an adjudicatory hearing for the return or restoration of things seized."

The issue is whether the state is limited to an appeal of juvenile court orders as set out in subsection (6) or whether it may appeal under ORS 419.561(1).

Subsection (6) was enacted to give the state the same rights to appeal in juvenile "delinquency" proceedings as it

has in adult criminal cases.[6] By its very terms, it applies only in cases involving issues relating to that kind of proceeding. There is no reason to conclude that the legislature intended to preclude the state from challenging an adverse final determination in a dependency proceeding by an appeal under ORS 419.561(1).

In *State ex rel Child. Ser. v. Dolan,* 47 Or App 401, 614 P2d 614 (1980), we considered the meaning of "person" in ORS 419.581(7).[7] In that case, CSD had appealed a juvenile court ruling that it could not request a rehearing because it was not a "person." We did not address whether CSD could appeal but did determine that it could act in the juvenile court proceeding:

> "Agencies must of necessity act through natural persons. That fact was implicitly recognized by the legislature in ORS 419.484(1) which, in describing the required form of petitions alleging that a child is within the juvenile court's jurisdiction, makes special provisions for petitions filed by employees of CSD and of certain other public agencies. We do not think the legislature intended, through its use of the word 'person' in ORS 419.581(7), to preclude CSD, county juvenile departments or other agencies performing related functions from fulfilling their statutory duties, which necessarily sometimes entail appearing on behalf of children in proceedings under ORS Chapter 419." 47 Or App at 405.

A county juvenile department also has a duty to appear in juvenile court proceedings on behalf of children. ORS 419.608. ORS 419.561(1) provides for an appeal from a juvenile court order by any "person whose right or duties are adversely affected * * *." That may be the result in a dependency proceeding when the order is adverse to the juvenile

---

[6] Subsection (6) was enacted in response to our opinion in *State ex rel Juv. Dept. v. Gates,* 46 Or App 587, 612 P2d 734 (1980), in which we held that, despite the provisions of ORS 419.578, the state could not appeal pre-adjudicatory orders from a juvenile court, because ORS 419.561(1) provides for appeals only from a "final order." *See* House Committee on Judiciary, May 20, 1983, Exhibit A, HB 2270.

[7] ORS 419.581(7) provides:

"At any time prior to the expiration of 10 days after notice of the order and findings of a referee, a child, the parent, guardian or other person appearing in behalf of the child or the petitioner may apply to the juvenile court for a rehearing. The application may be directed to all or to any specified part of the order or findings."

department's determination that a child's conditions and circumstances endanger the child's welfare. We conclude that the enactment of subsection (6) did not restrict the right of the state to appeal in such an instance.

■ The state assigns as error the determination to return physical custody of the children to the parents. Although none of the parties challenges the trial court's determination that the children are within the jurisdiction of the court, we must consider jurisdictional issues, even when they are not raised by the parties. Jurisdiction for a so-called "conditions-and-circumstances" juvenile hearing, ORS 419.476(1)(c), is not just the power of the court to act. It also requires a factual determination that a child is dependent, which is the basis on which the court may make the child a ward of the court, that is, may place the child in the court's "jurisdiction." To determine if the trial court had jurisdiction to make a disposition regarding these children, we must determine on *de novo* review whether the facts establish dependency. We are not bound by the trial court's findings of fact.

■ To support a finding that a child is dependent, the petition must allege facts that show the child to be endangered, ORS 419.476(1)(c), and proof must be by a preponderance of the evidence. ORS 419.500(1). The allegations may be amended either on the court's motion or on the motion of a party. ORS 419.500(1). However, without amending the petition, a trial court may not decide that conditions that are not alleged, even if the evidence is sufficient to prove them, can bring a child within the protection of the court. Failure to amend the petition leaves an affirmative jurisdictional conclusion groundless. *State ex rel Juv. Dept. v. Cochell,* 60 Or App 333, 338, 653 P2d 1006 (1982), *rev den* 294 Or 536 (1983).

The trial court's failure to amend the petition has no bearing on jurisdiction over Sean and Travis. The factual basis for that determination was proved in the Crook County proceeding in 1984, and it was error for the trial court and the parties to treat the case as if the allegations of the Crook County petitions, as well as those in the petition for Samantha and Joseph, had to be proved in Multnomah County. An order making a child a ward of the court is a final, appealable order. *Chandler v. State,* 230 Or 452, 370 P2d 626 (1962). A court may hold more than one hearing on a single petition, and it may

first determine jurisdiction and then postpone making a dispositional order until after a later hearing, in which event the jurisdictional order is not appealable, although the jurisdictional finding is reviewable on the appeal from the dispositional order. *State ex rel Juv. Dept. v. Reding,* 23 Or App 413, 542 P2d 934 (1975).

The Crook County orders were entered after a bifurcated hearing. The September, 1984, "interlocutory" order was not appealable; it specifically continued the hearing for disposition. The December dispositional order, however, was appealable, but no appeal was taken from it. Thus, the findings on which jurisdiction was established over Sean and Travis were conclusive and could not be challenged in the Multnomah County proceeding. The trial judge's findings here are a nullity insofar as they purport to relate to the allegations of the original petition and insofar as they are contrary to the 1984 orders.

■■ The effect of mother's October, 1986, petition was to place in issue whether the conditions and circumstances of Sean and Travis required them to remain in the court's jurisdiction. A wardship cannot continue if the jurisdictional facts on which it is based have ceased to exist. *State ex rel Juv. Dept. v. Nagle,* 36 Or App 237, 241, 584 P2d 338 (1978). However, that determination does not include a retrial of the original allegations. The evidence is limited to whether the conditions that were originally found to endanger a child persist. The court found that the conditions and circumstances of Sean and Travis required that jurisdiction be continued, but it did not make any findings that would support continuing jurisdiction. Our review of the record shows, however, that wardship should be continued. Sean and Travis were in the court's jurisdiction because of sexual abuse. Far from relieving those concerns about sexual abuse, the evidence in the consolidated hearing strengthened them, and we find that the conditions and circumstances found in the Crook County proceedings persist.

■ The jurisdictional issue regarding Samantha and Joseph required an original determination that the facts warrant establishing wardship. The trial court held that the state had failed to prove the allegations other than those that were admitted. We disagree. We hold that the state proved by a

preponderance of the evidence that Samantha and Joseph should be within the protection of the court.[8]

The state did not prove abuse of either of the younger children. However, the state had alleged, *inter alia,* that the children were endangered because of the sexual abuse by the father that had taken place in Crook County. The Crook County finding in reference to Sean and Travis was sufficient, when taken with evidence of conduct since that proceeding, to prove that allegation and supports the conclusion that Samantha and Joseph would be endangered by remaining in an abusive environment. *See State ex rel Juv. Dept. v. Miglioretto,* 88 Or App 126, 744 P2d 298 (1987). Furthermore, the state alleged, and the parents admitted, that they had violated the Crook County order. The state also alleged that mother had refused to acknowledge the fact, or any possibility, of abuse, and the record clearly demonstrates the truth of that allegation. The conditions and circumstances surrounding Samantha and Joseph endanger their welfare. ORS 419.476(1)(c).

■      We turn to the state's assignment on appeal that the trial court erred in returning the children immediately to the parents and in not providing protective services. We agree. Although the evidence led the judge to say that he did not know whether the father was an abuser, he resolved the matter in favor of the parents. In the light of the determination in the Crook County order, and the evidence of continued sexual abuse, we emphatically do not concur. The evidence does not support reuniting the children with the parents without protection for all of the children.[9]

We are cognizant of the potential for trauma involved in separating children from their parents. However, that must be weighed against a disposition which would allow them to remain in a potentially abusive environment. We therefore modify the dispositional order of the court.

----

[8] In *State ex rel Juv. Dept. v. Cochell, supra,* 60 Or App 333, we vacated a finding that the juvenile had committed theft when the petition did not allege that crime. Here, in contrast, the allegations that we find were proved are in the petition.

[9] We are aware that father and CSD have clashed repeatedly. However, we cannot create new resources for the children, and both CSD and the parents have an obligation to seek to achieve the best interests of the children.

Order modified by striking findings 1, 2, 4 and 5 and order paragraphs 1, 6 and 6(2) and to provide in their place:

(1) Sean, Travis, Samantha and Joseph shall be placed in the care and custody of CSD;

(2) Visitation by the parents shall be under the supervision of CSD;

(3) Sean and father are to continue psychiatric treatment, as set forth in the March 10, 1987, order;

(4) CSD shall make an immediate investigation and shall report to the trial court on the conditions and circumstances of the children no later than two months after the effective date of the appellate judgment;

(5) No later than three months after the effective date of the appellate judgment, the trial court shall hold a review hearing to evaluate the report of CSD, the reports from father's treating psychiatrist and any other reports or testimony that the trial court determines would be of assistance;

(6) At the review hearing, the trial court shall determine, based on the evaluations and investigation before it, as well as on the record of cooperation on the part of the parents in complying with the March 10, 1987, order, and the order of this court, whether the children shall be returned to the physical custody of their parents under the supervision of CSD, or whether the children shall remain in the care and custody of CSD.

As modified, the order is affirmed.