Argued and submitted January 17, resubmitted In Banc July 1, reversed August 12, reconsideration denied November 12, petition for review allowed December 22, 1992
(315 Or 271)

In the Matter of
Jonathan G. Smith, a Child.

## STATE ex rel JUVENILE DEPARTMENT OF LANE COUNTY,
*Respondent,*

*v.*

Darold A. SMITH,
*Appellant.*

(90-475; CA A68527)

836 P2d 173

Daniel N. Gordon, Eugene, argued the cause and filed the brief for appellant.

Katherine H. Waldo, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

EDMONDS, J.

Durham, J., dissenting.

## EDMONDS, J.

Father appeals from a juvenile court order finding his nine-year-old son to be within the court's jurisdiction and committing him to the legal custody of Children's Services Division (CSD) for an indefinite period. On *de novo* review, ORS 419.561(5), we reverse.

Father and mother dissolved their marriage in 1989. The judgment granted them joint custody of the son. Primarily, father has had physical custody of him. On October 13, 1990, father and mother were again living together. That night, mother's 12-year-old sister was visiting at the home. Father went to bed, while mother and her sister stayed up to watch a movie in the living room. The son and his step-brother were asleep in their bedrooms. After mother went to bed, the sister continued to watch television. Father, who had been asleep, walked through the living room on his way to the bathroom. He was nude. Mother testified that father always slept in the nude and that he often walked around the house unclothed. Father conversed briefly with sister and then returned to the bedroom. Sister turned off the television and was lying on the couch when father again came out of the bedroom, still nude, to get a drink of water. Father got a glass of water, drank it and then returned to his bedroom. Sister testified that she went to sleep and was awakened later by father stroking her hair with his hand. She said to him, "Darold, give me a hug, and go back to bed." According to sister, father gave her a hug, kissed her cheek and neck and touched her breast through her shirt. She testified that she told him to stop, he stopped, and he returned to his bedroom. Father testified that any touching of sister's breast was inadvertent and not for purposes of sexual gratification.

After the incident was reported, the Lane County Juvenile Department filed a petition requesting that the son be found within the jurisdiction of the Juvenile Court on the basis that, because father had subjected mother's sister to sexual abuse, his welfare was endangered. After a hearing, the juvenile court took jurisdiction, granted custody to CSD and required father to undergo sex offender treatment. Father argues that the juvenile department failed to meet its burden of proof in proving that the boy's condition or circumstances were such as to endanger his welfare.

■ We have held that, when there are circumstances that establish that, because one child has been molested, there is a danger to other children within the same home, those circumstances are sufficient for a court to assume jurisdiction over all children in the household. *See State ex rel Juv. Dept. v. Rhoades*, 73 Or App 192, 195, 698 P2d 66, *rev den* 299 Or 443 (1985); *see also State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 774 P2d 484, *rev den* 308 Or 315 (1989). However, each case depends on its own facts. In dependency proceedings, the state must prove, by a preponderance of evidence, ORS 419.500(1), that a child's "condition or circumstances are such as to endanger [the child's] welfare * * *." ORS 419.476(1)(c).[1] Therefore, the propriety of state intervention depends on whether it is more likely than not that harm will come to a specific child. *See State ex rel Juv. Dept. v. Rhoades, supra,* 73 Or App at 195; *see also Ornduff v. Bjork*, 100 Or App 448, 786 P2d 1284 (1990).

The state relies on the incident between father and the sister as the basis for jurisdiction. It argues:

"The reason that sexual conduct toward any child is a sufficient basis for protective jurisdiction over another child should be apparent. An adult who uses a position of power or trust to obtain sexual gratification from a child is a threat to *any* child in that adult's custody. Custody implies the existence of a power relationship between an adult and a child. A prior incident of sexual abuse against a child is a demonstration that the adult is willing to exploit that power to the detriment of the child." (Emphasis in original.)

We reject the state's invitation to adopt a *per se* rule. Its assertion that the son will likely be abused by father is not borne out by the evidence. There is no evidence that father has or will engage in any conduct to obtain sexual gratification by abusing his son. When asked if she felt that the son and his step-brother were safe in father's care, mother testified,

---

[1] ORS 419.476 provides, in relevant part:

"(1) The juvenile court has exclusive original jurisdiction in any case involving a person who is under 18 years of age and:

"* * * * *

"(c) Whose behavior, condition or circumstances are such as to endanger the welfare of the person or the welfare of others, * * *."

"I have never felt that the boys were unsafe in his care but I don't feel that has anything to do with what happened to * * * [my sister], either."

We have discounted a spouse's favorable characterization of a purported sex offender's conduct in other cases. *See, e.g., State ex rel Juv. Dept. v. Rhoades, supra; State ex rel Juv. Dept. v. Gates, supra.* However, in those cases, in an apparent attempt to keep the family unit together, the mothers did not recognize the danger in which the children were in. Here, there is no evidence that mother has such a motivation, because she and father's marriage has been dissolved and she has, at least intermittently, lived apart from father, who has primary physical custody of the son.

Circumstances could exist that would establish that a harmful environment could endanger the son's welfare, as distinguished from the likelihood of him being abused personally. However, the state's assertion that the fact that father used his position of trust to obtain sexual gratification from mother's sister creates a harmful environment, is not supported by the record. The sister was a temporary visitor in father's home, and there is no evidence of repetitive or on-going sexual abuse of anyone by father that gives rise to an inference that an abusive environment exists in the home. Moreover, no witness testified that father or the home environment presents a danger to Jonathan.

There has to be some evidence from which a reasonable inference can be drawn that, because father abused sister, the son's welfare is endangered. On the record in this case, we hold that the state has not met its burden of proof.

Reversed.

**DURHAM, J.,** dissenting.

The issue is whether the state has demonstrated, by a preponderance of the evidence, that "there is a reasonable prediction that harm will come," *State ex rel Juv. Dept. v. Rhoades,* 73 Or App 192, 195, 698 P2d 66 (1981), to father's minor son. The evidence is that father sexually molested a 12-year-old female in his home. The majority concludes that the prediction is unwarranted, because the abuse occurred only once and to a female child. Because I agree with the trial court that father's unrestricted custody over the son is a condition

or circumstance that endangers the boy's welfare, ORS 419.476(1)(c), I dissent.

The victim, father's 12-year-old sister-in-law, testified that she was sleeping on a loveseat in father's home. The son, his mother and his stepbrother were asleep in other rooms. The victim awoke to find father squatting naked in front of her with his legs open. He was stroking her hair. He started kissing her cheek and then kissed her down her neck. He grabbed her with both arms and pulled her towards him in a hug. He touched and rubbed her breast through her t-shirt. She told him to stop, and he left. Father claimed that he was covering her with a blanket and that, when she awoke and rolled over, he had inadvertently caught his hand between the blanket and her shirt. The trial court accepted the victim's version.

In *State ex rel Juv. Dept v. Rhoades, supra,* we held that proof of the father's sexual abuse of another child in the same home where the subject child lived was sufficient to confer jurisdiction on the juvenile court. In *State ex rel Juv. Dept v. Gates*, 96 Or App 365, 774 P2d 484, *rev den* 308 Or 315 (1989), the trial court found that the father had sexually abused two boys. It found their younger brother and sister to be within the jurisdiction of the juvenile court, even though no direct harm had befallen them at their father's hands. We affirmed, concluding that the children "would be endangered by remaining in an abusive environment." 96 Or App at 373.

The majority refuses to recognize the conclusion that follows ineluctably from the cases: A father's sexual abuse of a child in his home creates an abusive environment that endangers the welfare of other minors in the home, regardless of their gender, and that is a basis for juvenile court jurisdiction. Once an abuser exploits, for sexual gratification, a relationship with a minor in the abuser's home, the court is not obligated to wait until other minors residing in the home are also exploited before intervening to protect them.

The majority distinguishes the cases because, "in an apparent attempt to keep the family unit together, the mothers did not recognize the danger in which the children were in [sic]." 114 Or App at 598. It emphasizes mother's and father's divorce but disregards the fact that, at the time of the

incident, father and mother were living together. Mother also failed to recognize the danger to the boy. She did not leave father's home until CSD officials arrived with a summons and told her that she and her sons had to leave. That happened three or four weeks after the sexual abuse occurred. Even then, the parent's joint custody arrangement prevented mother from denying father contact with him.

We have recognized, in the context of termination of parental rights, that a parent's sexual abuse of one child can threaten any child who must associate with the abuser. In *State ex rel Juv. Dept v. Miglioretto*, 88 Or App 126, 129, 744 P2d 298 (1987), we held that the parental termination statute, ORS 419.523,

"does not require that any child remain in an abusive environment until the state can show that abuse of that particular child has occurred. If there is evidence of abuse of *any* child, the statute permits a court to remove a child permanently from a dangerous situation." (Emphasis in original.)

I would apply that rationale here.[1] Father's sexual abuse of mother's sister and mother's inability, under the joint custody order, to prevent the boy from living with father establish that conditions and circumstances endanger the boy's welfare and justify placing him in the juvenile court's jurisdiction. I would affirm the order of the juvenile court.

Richardson, Deits and De Muniz, JJ., join in this dissent.

---

[1] I emphasize that juvenile court jurisdiction would restrict only father's right to custody, not his parental right.