Argued and submitted November 15, 2012, reversed and remanded
February 6; respondent's petition for reconsideration filed March 6, appellant's
petition for reconsideration filed March 18, and respondent's response to
appellant's petition for reconsideration filed March 18, allowed by opinion
July 24, 2013
See 257 Or App 633, ___ P3d ___ (2013)

In the Matter of T. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. P.,
*Appellant.*

Clackamas County Circuit Court
110849J;
Petition Number 110849J02;
A151549

296 P3d 606

Valerie Colas, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F.

Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Hadlock, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Father appeals from a juvenile court judgment that continued jurisdiction over his son, T. He argues that the court erred in basing its decision on father's "anger and frustration," "viewed in light of the risk that is represented by his use of controlled substances," because there was insufficient evidence in support of the court's finding that father's condition exposed T to a serious loss or injury and, in any event, undisputed evidence showed that, at the time of the hearing, father had successfully completed substance abuse treatment and there was no evidence regarding risk of relapse. We agree with father that the court based its judgment on allegations regarding father's condition that had been ameliorated. We therefore reverse and remand.

The following facts derive from the only evidence in the very sparse record, which (with the exception of formal petitions generated by the Clackamas County District Attorney and judgments from the court) consists entirely of reports from, and testimony of, one caseworker, Lawrence; father did not submit any memoranda and he did not testify at the hearing.

T, the child at issue, was born on June 16, 2009.[1] At the time, father and mother were living together, and father became T's primary caretaker. At some point before T was two, however, mother moved out of the family home and took T with her. Father suspected T was unsafe with mother in her new living situation, and he reported his concerns to the Department of Human Services (the department). The department investigated and noted significant bruising on T, removed him from mother's custody, and placed him with father. Father, however, subsequently broke the door of mother's residence while he was under the influence of methamphetamine and, as a result, the department removed T from his custody and placed him with father's mother.

---

[1] The dependency petition alleges that T was born on June 16, 2011, and was two months old at the time of the August 2011 hearing. That is error. As the judgment from that hearing clarifies, T was born on June 16, 2009, and was two years old in 2011.

In August 2011, when T was two years old, the state filed a dependency petition containing the following allegations: with respect to mother, that two of T's half-siblings had suffered unexplained injuries while in her custody; and with respect to father, that his "use of controlled substances impairs his ability to competently parent the child," and he "engages in violent, threatening and tumultuous behavior, including property destruction, towards the mother, which if unaddressed, creates a risk of harm to the child." Father conceded his substance abuse problem. The court dismissed the allegation of violence but took jurisdiction, finding that father's "use of controlled substances impacts his ability to competently parent the child." The record does not contain the court's judgment regarding mother, but it is apparent that the court found the allegations against her were also founded. T remained with his paternal grandmother.

Father subsequently and immediately addressed his substance abuse problem and, by December 2011, he had successfully completed drug and alcohol counseling as well as parenting classes. He also had obtained housing and formulated a concrete plan for T's return.

On December 13, 2011, the court held a jurisdictional hearing regarding mother.[2] Father attended. Apparently, he was extremely agitated and conducted himself in an aggressive and hostile manner toward some of the participants, particularly representatives of the department and the person who he believed was responsible for the abuse of T. Unfortunately, the details of his conduct are not in the record, although it appears that his hostility toward the department resulted from his displeasure in the department's failure to protect T from abuse while in mother's custody. The department caseworker was so disturbed by father's conduct, in combination with other contacts that she had had with him in which she found him unable to refocus his attention from past grudges, that she persuaded the department to stop permitting father to have unsupervised visits with T; instead, all visits were to be at department offices.

---

[2] The record does not show the outcome of this hearing, but apparently the court continued jurisdiction with respect to mother. She is not part of this appeal.

For the next two months, father did not attend any visits, apparently feeling that meeting T at department offices would "traumatize" T. In February, however, after the two-month hiatus, father resumed visits, although between that time and his hearing, he missed three. On one occasion, he had a meeting with his attorney; on one occasion, he told department caseworkers that the transportation difficulties in getting from his home to the department office were too difficult; on the other occasion, his failure to attend was unexplained. On two occasions, he ended visits early because he felt that both he and T were "bored."

Meanwhile, the department filed an amended petition asking the court to continue jurisdiction. This time, however, the only allegation was father's "mental health and/or anger and frustration problems." The hearing on that petition occurred on April 18, 2012. One person—the department caseworker, Lawrence—testified. According to Lawrence, T is a "special needs" child who is "a little bit delayed" and "receives speech therapy and occupational therapy." Lawrence also noted that father's anger and frustration issues are more severe than those of other parents who deal with the department and, further, he lacks insight, remains unwilling to move past his anger with the department, and is "not present for his son, * * * emotionally speaking." She testified that father's "body language" and "tone of voice" would negatively affect T and that, in sum, those factors, combined with father's erratic visiting pattern, "compromised" the strong bond that had been created between him and T when father was the primary caretaker. When asked if she thought father would be a "safe" parent, she responded, "I do not," without further amplification.

After hearing testimony and closing arguments, the court determined that the state had not established that father's mental health impaired his ability to parent T, but that his severe anger and frustration, in combination with his history of substance abuse, did. The judgment continuing jurisdiction specified, "Viewed in light of the risk that is represented by his use of controlled substances, father's anger and frustration represent a condition that, without treatment, impairs his ability to parent."

On appeal, father raises, in essence, two arguments. First, he argues that there was insufficient evidence to support the finding that his condition amounted to "a current threat of serious loss or injury." Father is correct that, in order to justify continued jurisdiction, the department has to prove by a preponderance of the evidence that conditions or circumstances related to father's conduct or condition give rise to a current threat of serious loss or injury to the child. *Dept. of Human Services v. J. H.*, 248 Or App 118, 119, 273 P3d 203 (2012); *Dept. of Human Services v. C. Z.*, 236 Or App 436, 236 P3d 791 (2010). Although ample evidence supports the finding that father was angry, frustrated, difficult to work with, intemperate, and immature, and that he once had a substance abuse problem, the evidence in support of the court's finding that these traits create a current threat of serious harm is, indeed, extremely thin: the unelaborated testimony of one witness, uncorroborated by the opinion of any qualified expert in child development. However, father did not object to any of the caseworker's testimony, he did not challenge the foundation for her opinion, and he did not offer any countervailing evidence in rebuttal. Under our standard of review—for *any* evidence, because neither party requests review *de novo*, ORS 19.415(3)(b); *C. Z.*, 236 Or App at 442—we cannot conclude that the department failed to meet its burden.

Father's second argument is that, even if the court could have based its judgment on the evidence of father's anger and frustration, that is not what it did. Rather, the court found a threat of serious loss or injury "in light of the risk that is represented by his use of controlled substances," when there is no evidence of such risk. That argument has merit. As the court itself acknowledged, father no longer *had* a substance abuse problem; the court found, "You don't have a drug and alcohol issue now." Further, it is undisputable that the court relied on father's substance abuse history or risk in reaching its conclusion. It explained:

> "Father's anger and frustration problems evidenced since jurisdiction was established based on use of controlled substances, taken together, represent a condition or circumstance that endangers the welfare of the child, and without treatment, impairs his ability to parent.

"Maybe I could have phrased this better, but what the Court finds is that since jurisdiction was established, father has manifested much more than an ordinary level of anger and frustration, more than the circumstances seem to suggest could be appropriate. I'm not sure it represents a mental health problem, and I'm not finding that there is a mental health problem. I'm not sure that the anger and frustration are indicative just of deep-seated immaturity more than just a little immaturity or just an exercise of very poor judgment or a mental health issue.

"But the evidence is there, and taken together, the recognized issue that father has had in the past with drugs and alcohol represent a condition that represents a threat to the child.

"\* \* \* \* \*

"I am trying to get at the point that this is this anger and frustration in concert with the previous finding that there was a controlled substance issue. That's what represents the risk."

"It is axiomatic that a juvenile court may not continue a wardship 'if the jurisdictional facts on which it is based have ceased to exist.'" *State v. A. L. M.*, 232 Or App 13, 16, 220 P3d 449 (2009) (quoting *State ex rel Juv. Dept. v. Gates*, 96 Or App 365, 372, 774 P2d 484, *rev den*, 308 Or 315 (1989)). There is no evidence in the record to support the finding that father had a substance abuse problem at the time of the April 2011 continuation hearing, and, indeed, the undisputed evidence (and judicial finding) is that he did not. Nor is there any evidence that, having completed treatment, he was nonetheless at risk for relapse. The court erred in relying on substance abuse issues in finding that father's condition presented a risk of harm to T.[3]

Reversed and remanded.

---

[3] The court acknowledged that it reached its decision based on matters that were "not consistent with the [amended petition]." This case does not present us with the need to decide whether a petition that is amended between a first jurisdictional hearing and a subsequent continuation hearing must repeat the originally asserted grounds for jurisdiction in order to alert the parent that those grounds remain relevant. *See Dept. of Human Services v. G. E.*, 243 Or App 471, 260 P3d 516, *adh'd to as modified on recons*, 246 Or App 136, 265 P3d 53 (2011) (juvenile court may not rely on allegation that is extrinsic to the original jurisdiction judgment).