On respondent's petition for reconsideration filed March 6; and on appellant's petition for reconsideration filed March 18, and respondent's response to appellant's petition for reconsideration filed March 18, resubmitted en banc May 7, reconsideration allowed; former opinion (255 Or App 51, 296 P3d 606) adhered to as clarified July 24, 2013

In the Matter of T. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. P.,
*Appellant.*

Clackamas County Circuit Court
110849J;
Petition Number 110849J02;
A151549

307 P3d 444

Peter Gartlan, Chief Defender, and Valerie Colas, Deputy Public Defender, Office of Public Defense Services, for appellant's petition.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Tiffany Keast, Assistant Attorney General, for respondent's petition and response to appellant's petition.

Before Haselton, Chief Judge, and Armstrong, Wollheim, Schuman, Ortega, Sercombe, Duncan, Nakamoto, Hadlock, and Egan, Judges.

SCHUMAN, J.

**SCHUMAN, J.**

In *Dept. of Human Services v. N. P.*, 255 Or App 51, 296 P3d 606 (2013), we reversed and remanded a juvenile court judgment that denied father's motion to terminate wardship and dismiss jurisdiction over his two-year-old child, T. Both parties petition for reconsideration, urging us to clarify whether our decision both terminated the wardship and dismissed jurisdiction, or only dismissed jurisdiction. Father also requests reconsideration of our use of an "any evidence" standard of review in determining that the evidence presented by the Department of Human Services (the department) was sufficient to establish that father's anger management and manifestations of frustration created a current threat of serious loss or injury to T. We allow reconsideration, clarify our disposition, and, as clarified, adhere to our former opinion.

The following facts are taken from *N. P.*, 255 Or App at 53-56. In 2011, the department filed a dependency petition regarding T, alleging (as relevant) that father's use of controlled substances made him incompetent to parent. Father conceded that allegation, and it served as the basis for the juvenile court's subsequent assertion of jurisdiction over T on August 25, 2011. Father then addressed his substance abuse problem, and, by December 2011, he had successfully completed drug and alcohol counseling. Two months later, in February 2012, the department filed an amended dependency petition, alleging that T was within the jurisdiction of the court because "[t]he father has ongoing mental health and/or anger and frustration problems that impair his ability to competently parent the child." That petition did not allege substance abuse problems. After a hearing on the petition, the court in April 2012 found that father no longer had a substance abuse problem and his mental health did not impair his ability to adequately parent, but that jurisdiction was nonetheless justified because, "[v]iewed in light of the risk that is represented by his use of controlled substances, father's anger and frustration represent a condition that, without treatment, impairs his ability to parent." *Id.* at 55.

On appeal, father argued that the court erred in denying his motion to terminate the wardship and to dismiss

jurisdiction over T. The arguments were combined pursuant to ORAP 5.45(6). We first noted that the department presented sufficient evidence to establish that father's anger, frustration, intemperance, and immaturity created a current threat of serious harm to T.[1] *Id.* at 56. We went on to note, however, that the court did not base its judgment on father's anger and frustration; in fact, the court expressly held, "I'm not finding that there is a mental health problem." Rather, the court determined that the evidence of father's personality, "taken together" with "the recognized issue that father has had in the past with drugs and alcohol represent a condition that represents a threat to the child." *Id.* at 57. Reasoning that the court relied on father's past substance abuse and his risk of relapse, and noting that the court cannot assert jurisdiction based on facts that have ceased to exist or for which there is no evidence, we held that the court erred. We therefore reversed and remanded. *Id.*

In a petition for reconsideration, the department asks us to "clarify whether [we] intended to reverse the denial of father's motion to dismiss jurisdiction and terminate wardship, or only reverse the April 26, 2012[,] judgment taking jurisdiction over [T] based on a second petition." Father agrees that "the parties need clarification."

T became a ward of the court as a result of the August 25, 2011, judgment. Wardship continues until the court enters a judgment terminating it. *Dept. of Human Services v. D. M.*, 248 Or App 683, 685, 275 P3d 971 (2012). Further, if the department files a new or amended petition when the child is already a ward of the court, and the court enters a judgment asserting jurisdiction over the child, and that judgment is reversed, in some circumstances the wardship established in the original judgment continues. Those circumstances do not exist here. Father's appeal clearly challenged the court's denial of his petition to terminate wardship *and* its April 2012 judgment asserting jurisdiction based on the February 2012 petition. The court found that

---

[1] We reached that determination using an "any evidence" standard. As we discuss below, 257 Or App 639-40, we now hold that a different standard applies. Application of that new standard to the facts in this case does not change the outcome.

the allegation underlying the 2011 determination of wardship—father's substance abuse—was no longer present. Based on that finding, we held that the 2011 judgment establishing wardship could not be sustained. And, although the court found that the 2012 allegation justified jurisdiction, we reversed. Thus, that judgment no longer obtains. To be clear, our disposition was intended to encompass, and did encompass, a reversal of the 2012 judgment and a remand with the (unfortunately implicit) instruction that, on remand, the court would terminate the wardship.

Father also takes issue with our assertion that the question of whether a parent's condition creates a current threat of serious loss or injury is a question of fact and, therefore, subjected to a deferential "any evidence" standard of review. Father argues that the question is legal in nature, and we should therefore review for legal error. We acknowledge that our treatment of this issue since the legislature in 2009 made *de novo* review optional instead of mandatory[2] has not been a model of clarity. In *State v. S. T. S.*, 236 Or App 646, 238 P3d 53 (2010), we expressly treated the question as factual and, for that reason, applied an "any evidence" standard. We began with the generic "standard of review" statement and citations:

> "We are no longer required to review the evidence in a juvenile dependency case *de novo*. *See* ORS 19.415(3)(b) (providing that, in this type of case, 'the Court of Appeals, acting in its sole discretion, may try the cause anew upon the record or make one or more factual findings anew upon the record'). * * * Accordingly, we review the juvenile court's legal conclusions for errors of law, but are bound by the court's findings of historical fact so long as there is any evidence to support them. *Emmert v. No Problem Harry, Inc.*, 222 Or App 151, 159, 192 P3d 844 (2008) (citing Or Const, Art VII (Amended), § 3; *Ball v. Gladden*, 250 Or 485, 487, 443 P2d 621 (1968))."

236 Or App at 654-55. The issue in *S. T. S.* was whether the father's domestic abuse of the mother was a sufficient

---

[2] The change from mandatory to discretionary *de novo* review in most equitable cases occurred on June 4, 2009, the effective date of ORS 19.415(3)(b), enacted as Oregon Laws 2009, chapter 231, section 2.

justification for the assertion of jurisdiction over the couple's children. We held:

> "[T]he juvenile court made express factual findings: (1) that father had physically abused mother 'often' and (2) that father's physical and verbal abuse of mother 'endangers the welfare' of the two children.
>
> "As to the court's first finding, father is correct that the inquiry does not end with whether father committed physical violence against mother; our inquiry relates to the *children's* conditions and circumstances and not those of the parents. Instead, our inquiry in this case is whether the violence between the parents creates a current risk of harm to the children's welfare—that is, the court's second finding. Given our standard of review, we must determine whether there is *any evidence in the record* to support such a finding.
>
> "We conclude that, although the record is slim on that point, the state's evidence meets the *low any-evidence* standard."

*Id.* at 655 (first emphasis in original; emphases added).

Other cases appear to treat the question of whether a parent's condition presents a current risk of harm as legal in nature. In *Dept. of Human Services v. A. F.*, 243 Or App 379, 386-88, 259 P3d 957 (2011), we reversed the court's determination that the father's "children were endangered by [his] possession of pornography for two reasons." We agreed with the father that "the evidence was legally insufficient to support either reason." *Id.* at 386. That phraseology—"legally insufficient"—implies that we reviewed for legal error. Again, in *Dept. of Human Services v. M. Q.*, 253 Or App 776, 786, 292 P3d 616 (2012), we once again articulated the general rules regarding standards of review and then announced, "We agree with father that, as a matter of law, the record does not support a determination that the child currently is endangered." And in *Dept. of Human Services v. G. J. R.*, 254 Or App 436, 438, 295 P3d 672 (2013), we concluded that "the record contains insufficient evidence from which a reasonable factfinder could conclude, by a preponderance of the evidence, that father's prior convictions and failure to complete sex offender treatment posed

a current risk of harm to Z." We added, immediately after the sentence quoted above, "Moreover, the record includes no evidence that father's prior convictions and failure to complete treatment combines with the already established bases for jurisdiction to 'synergistically create[] a whole that is more dangerous than the sum of its parts.'" *Id.* (quoting *State ex rel Juv. Dept. v. N. W.*, 232 Or App 101, 111, 221 P3d 174 (2009), *rev den*, 348 Or 291 (2010) (brackets in original)).

The distinction between fact questions and legal questions is not always self-evident, and the question these cases present—how to review the determination that a parent's condition at the time of a jurisdiction hearing does or does not present a risk of harm to a child—does not have an easy answer. Nonetheless, we welcome the opportunity to state clearly our standard of review (when we do not exercise our discretion to review *de novo*) of a juvenile court's determination of jurisdiction predicated on ORS 419B.100(1)(c).

We begin with a fundamental functional premise. Our inquiry and corollary review function is this: On the record before it, did the juvenile court err in making the statutorily prescribed determination? Or, stated more positively and precisely, did the record permit the juvenile court to determine that "the child's condition or circumstances" gave rise to a current "threat of serious loss or injury to the child" and that there is a "reasonable likelihood that the threat will be realized"? *A. F.*, 243 Or App at 386.

Our non-*de novo* review of such a determination is analogous to the deferential review of other factually predicated determinations that are, ultimately, circumscribed by limits of "matter of law" sufficiency, for example, denials of motions for directed verdict or motions for judgment of acquittal. That is, we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome. Specifically, with respect to a juvenile court's determination under ORS 419B.100(1)(c), we: (1) assume the correctness of the juvenile court's explicit findings of historical fact if these findings are supported by any evidence in the record; (2) further assume that, if

the juvenile court did not explicitly resolve a disputed issue of material fact and it could have reached the disposition that it reached only if it resolved that issue in one way, the court implicitly resolved the issue consistently with that disposition; and (3) assess whether the combination of (1) and (2), along with nonspeculative inferences, was legally sufficient to permit the trial court to determine that ORS 419B.100(1)(c) was satisfied.

We emphasize that our non-*de novo* appellate review function does not allow us to substitute our assessment of the persuasiveness of the evidence for the juvenile court's, nor does it allow us to revisit the juvenile court's resolution of factual disputes or its choice among reasonable inferences. Rather, as (again) with our review rulings on motions for directed verdicts or motions for judgment of acquittal, our function is limited to determining whether the evidence was sufficient to permit the challenged determination.

With that clarification, we reiterate our prior determination that the evidence adduced before the trial court was sufficient to establish that father's condition or conduct gave rise to a current threat of serious loss or injury to the child, but that the court did not base its judgment on that determination; rather, it based its decision on the determination that father had a substance abuse problem at the time of the relevant hearing, and there was *no* evidence to support that determination.

Reconsideration allowed; former opinion adhered to as clarified.