No. 640 September 5, 2024 795

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of C. P.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

N. L.,
*Appellant.*

Clackamas County Circuit Court
23JU02050; A182086

Cody M. Weston, Judge.

Submitted March 1, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Kyle Sessions, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

ORTEGA, P. J.

Affirmed.

**ORTEGA, P. J.**

In this juvenile dependency case, mother appeals from a judgment asserting jurisdiction over her 12-year-old daughter, C. After a trial in June 2023, the juvenile court found that the Department of Human Services (DHS) proved the allegations that mother's "substance use issues" interfered with her ability to safely parent, and that her exposure of her daughter to "unsafe individuals" presented a risk of harm to C.[1] On appeal, in three assignments of error, mother argues that the juvenile court erred in asserting jurisdiction over C. Because the record supports a conclusion that mother's actions presented a risk of harm to C, we affirm.

Because *de novo* review is neither requested nor warranted in this case, we view "the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). "To establish a basis for juvenile court jurisdiction for purposes of ORS 419B.100(1)(c), the state must prove, by a preponderance of the evidence, that a child's welfare is endangered because, under the totality of the circumstances, there is a current threat of serious loss or injury to the child that is reasonably likely to be realized." *Dept. of Human Services v. K. C. F.*, 282 Or App 12, 19, 383 P3d 931 (2016) (citation and internal quotation marks omitted).

Reviewing the record under that standard, we conclude that it contains sufficient evidence for the juvenile court to determine that mother's substance use and her exposure of C to unsafe individuals endangered C's welfare. Mother completed a drug and alcohol treatment program in 2017, but she lost her housing and job sometime in 2020 and relapsed in 2022. C was living with mother's aunt but, early in 2023, she went to live with mother in a hotel. While C was staying there, mother smoked fentanyl about "every two hours." She would place a towel under the bathroom door

---

[1] Father admitted, and mother does not dispute, that he was in custody and unable to be a custodial resource. Father is not a party to this appeal.

before smoking and, on one occasion, hung a sheet in the room and smoked fentanyl on the other side of the sheet.

In March 2023, C returned to mother's aunt's home. Around the same time, a DHS caseworker visited mother's hotel room, and it smelled very strongly of chemicals. Mother denied using fentanyl but acknowledged that, if tested, she would be positive for opioids. While she was staying with mother at the hotel, C did not attend school, spent "a lot of time wandering the streets," and also spent time with one of her older brothers, who also smoked fentanyl. C reported to a DHS caseworker that, on one occasion, she "was left alone with a strange man," who was "passed out" on the bed in the hotel room. That evidence supports the juvenile court's finding of a nexus between mother's substance use, her exposure of C to unsafe persons, and a current threat of harm to C.

In arguing otherwise, mother points out that, by the time of the jurisdictional trial, she had been recommitted to engaging in drug treatment. However, mother did not respond to outreach attempts until the day before the trial. During an in-person visit about two weeks before trial, C "suspected that her mom probably had things on her at the visit," and C "could tell when she'd been using." At a visit in May 2023, mother was falling asleep. It was reasonable for the juvenile court to infer from that evidence that mother continued to use substances and that her use exposed C to risks of harm. Considering the totality of the circumstances, the evidence supports the juvenile court's assertion of jurisdiction over C. *See N. P.*, 257 Or App at 640 (explaining that "our function is limited to determining whether the evidence was sufficient to permit the challenged determination").

Affirmed.