Argued and submitted October 17, reversed and remanded December 18, 2013

In the Matter of J. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Appellant,*
*and*

J. H.,
a Child,
*Appellant,*

*v.*

G. L. H.,
*Respondent.*

Washington County Circuit Court
J120042;
Petition Number 01J120042M;
A154396

316 P3d 428

Michael Casper, Deputy Solicitor General, argued the cause for appellant Department of Human Services. On the brief were Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Shannon T. Reel, Assistant Attorney General.

Megan L. Jacquot filed the brief for appellant J. H.

Shannon Storey, Senior Deputy Public Defender, argued the cause for respondent. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Duncan, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

In this juvenile dependency case, the Department of Human Services (DHS) appeals from a permanency judgment of the juvenile court dismissing the state's wardship over mother's six-year-old child, J. The child also appeals from the juvenile court's judgment and joins in DHS's contention that the juvenile court erred in dismissing the wardship. DHS and the child have requested that we review this case *de novo*. We decline to exercise our discretion to review *de novo*, but we conclude that the juvenile court's findings are not supported by legally sufficient evidence, *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013), and, for that reason, that the juvenile court erred in dismissing jurisdiction. We therefore reverse the juvenile court's judgment.

DHS has been involved with the family since 2011, when intensive home services were provided to mother on a voluntary basis. The child was taken into protective custody on March 5, 2012, after multiple calls to DHS expressing concerns of neglect.

The state filed a petition for jurisdiction on March 6, 2012. At a status hearing on May 4, 2012, mother admitted to the juvenile court's jurisdiction based on allegations that (1) mother's mental health problems and borderline intellectual functioning interfere with her ability to competently care for J and J's siblings; (2) mother's use of methamphetamine impairs her ability to provide minimally adequate care for J and J's siblings; and (3) mother's impulsive and angry behavior places J and J's siblings at risk of harm in her care.

J was placed in foster care with another sibling, and the juvenile court took jurisdiction over J and established a permanency plan of reunification, with a concurrent plan of adoption.[1] At a permanency hearing on March 1, 2013,

---

[1] The juvenile court attached these findings:

"**What facts demonstrate that it is in the best interest of the child to be placed in the Temporary Custody of DHS- Child Welfare?** The mother struggles to safely parent the children due to her ongoing mental health issues, borderline intelligence and possible methamphetamine abuse. The mother left the children with another person without making a plan for

the juvenile court found that DHS had made reasonable efforts and that mother had not made sufficient progress toward meeting expectations. The court continued the case plan of reunification and ordered mother to participate in services. The court also ordered DHS to "staff case w/A.G. within 45 days," which the parties understand to be a short-hand instruction to move the case forward to termination of parental rights. The court attached findings to the judgment supporting the determinations that DHS had made reasonable efforts and that mother had not made sufficient progress.[2] The court set a permanency hearing for May 28, 2013.

At that hearing, neither mother, child, nor DHS presented any testimony. Mother did not challenge the juvenile court's continued jurisdiction or seek to dismiss the

---

their care or needs. The mother has been offered extensive services through DHS, but has been unable to alleviate the ongoing safety concerns. The children do not have legal fathers.

"**What facts demonstrate that reasonable efforts have been made to prevent or eliminate the need for this placement? (If no services have been offered, would any service have eliminated the need for placement?)** DHS has been working with the mother on a voluntary case for the last nine months. Services have included ISRS, drug and alcohol information and a psychological evaluation. There are concerns that the mother is abusing drugs and her behavior remains erratic. At this time, the children are unsafe in her care."

(Boldface in original.)

[2] The attached findings stated:

"**What facts demonstrate that it is in the best interest of the child to be placed in the continued Custody of DHS- Child Welfare?** DHS was contacted in March, 2012. This was the sixth report to the Child Abuse Hotline regarding neglect of [mother's] two young children. [Mother] was screaming, crying, cursing, threatening to kill herself, pushing and kicking things in the presence of her young children. She was out of control to the point that a second police car was called. She was taken to the hospital and the children were placed in protective custody. She was later found to have a positive UA for methamphetamine during this episode. The father of [J] was deported. The whereabouts of the father of [J's sibling] were unknown.

"**What facts demonstrate that reasonable efforts have been made to prevent or eliminate the need for this placement? (If no services have been offered, would any service have eliminated the need for placement?)** A voluntary case was opened in 2011. Two rounds of intensive in-home services were provided. A psych eval of the mother was provided.

"**What facts demonstrate that reasonable active efforts have been made to reunify the family?** Services were offered to this family for a year prior to their removal."

(Boldface in original.)

wardship. The court received into evidence DHS caseworker Judy Cooper's report outlining DHS's efforts to achieve the primary plan of return to parent. The report noted that mother had had "spotty" participation in drug and anger management treatment, had received counseling services, and was on medication for depression. The report stated that, although there was no evidence that mother was continuing to use methamphetamine regularly, she continued to exhibit poor judgment as to safety issues, had failed to visit the child regularly, and had overdosed on antidepressant medication in a suicide attempt on February 26, 2013. Cooper's report also referred to two psychological evaluations of mother. Both evaluations had concluded that mother had significant limitations that would impair her ability to parent. The report noted that, in a psychological evaluation performed on October 9, 2012, Dr. Deitch had concluded that mother

> "is not considered to be a viable placement resource for her sons at this time, and she will require close oversight and supervision by another responsible adult, should a decision be made to return the children to her care. Her prognosis for being able to become a consistently safe and responsible long-term independent residential parenting resource for her sons is considered to be highly guarded."

Cooper's report concluded with a recommendation that the child continue as a ward of the court and remain in the custody of DHS for care, placement, and supervision. DHS requested that the court find that DHS had made reasonable efforts that were in the best interests of the child and that the court order that DHS and mother abide by the signed action agreement.

Cooper did not testify at the hearing but gave a statement that, as directed by the court in March 2013, DHS had met with an assistant attorney general twice but had not yet decided whether to pursue termination of mother's parental rights. DHS was waiting for additional information and was considering a long-term placement of the child with his maternal grandfather, who was undergoing certification and wanted to be a placement for the child either through adoption or guardianship.

The child's attorney expressed approval of DHS's plan, although she urged that DHS move more quickly. She explained that the child was doing well in his current foster placement and noted that mother had missed some recent visits.

Mother's attorney reported that mother had completed a requested drug and alcohol assessment and had a series of clean urine tests, had a stable residence, and a letter from a psychiatrist who reported that "[w]e see no indications that [mother] would not be able to adequately parent her children." Mother's attorney reported that mother had told him that she was looking for work and also applying for SSI.

The juvenile court, as noted, did not take testimony but allowed those present at the hearing to make statements. The maternal grandmother expressed concern for the number of placements and requested that she be considered as a resource for the child. The child's maternal grandfather explained that he was prepared to care for the child as soon as he was certified and expressed agreement with DHS's plan. Mother explained that she had missed one visit with the child because of an interview and one visit because of a misunderstanding. She asked for additional supervised visits. No person present at the hearing requested a termination of the wardship.

At the conclusion of the hearing, the juvenile court stated that it would make the findings requested by DHS. Nonetheless, the court said:

> "You know, these cases don't always work out perfectly. And this may not be a great solution, but I'm going to dismiss the case today.
>
> "I order[ed] the State to staff it, hoping that they would agree that it was appropriate to move forward to terminate the mother's parental rights, they elected not to do so—and without having them decided on their end. And mom has made some progress towards the issues that I have jurisdiction over.
>
> "The case is going to be dismissed. Thank you."

The juvenile court issued a permanency judgment on May 28, 2013, in which it found that DHS had made reasonable efforts and that mother had made sufficient progress toward meeting the expectations set forth in the service agreement. The judgment did not include an explicit finding as to whether the child could be safely returned to mother's care. With regard to DHS's reasonable efforts, the judgment stated that findings were attached and incorporated. A form attached to the judgment set forth the facts demonstrating that reasonable efforts were made to reunify the family. However, the attached form is the same form that had been attached to the permanency judgment of March 1, 2013, and it also describes facts that it states demonstrate that "it is in the best interest of the child to be placed in the continued [c]ustody of DHS." Thus, there is an inconsistency between the attached findings and the juvenile court's judgment that the wardship should end. The judgment then dismissed the wardship and DHS's legal custody and guardianship.

On appeal, the state asserts that the juvenile court erred in terminating the wardship and dismissing DHS's legal custody and guardianship of the child. When, as here, the case plan at the time of the hearing is to reunify the family, ORS 419B.476(2)(a) requires that the juvenile court determine whether DHS has made reasonable efforts and whether the parent has made sufficient progress to make it possible for the ward to return safely home. Although the juvenile court did not explicitly find that mother had made sufficient progress to make it possible for the child to safely return home, that finding is implicit in the court's decision to terminate the wardship. The state asserts that this record does not support that implicit finding, and we agree. The only evidence in the record is the caseworker's report, and it documents that, although mother's abuse of methamphetamine appears to be in remission and her housing situation has stabilized, mother's mental health problems and borderline intellectual functioning continue to interfere with her ability to care for J. Viewing the evidence in the light most favorable to the court's disposition, we conclude that the juvenile court's implicit finding that mother has made sufficient progress to make it possible for the child to safely return home is not supported by legally sufficient evidence.

*N. P.*, 257 Or App at 639. We conclude, accordingly, that the juvenile court erred in dismissing the wardship.

Reversed and remanded.