***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

Argued and submitted October 25, 2022, reversed and remanded
January 5, 2023

In the Matter of P. K.,
aka P. S., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

T. K. K.,
*Appellant.*

Clackamas County Circuit Court
20JU01308; A178733

Heather Karabeika, Judge.

George W. Kelly argued the cause and filed the brief for appellant.

Patricia G. Rincon, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Mooney, Judge, and Pagán, Judge.

SHORR, P. J.

Reversed and remanded.

**SHORR, P. J.**

In this juvenile dependency appeal, father appeals from a judgment changing the permanency plan for his three-year-old daughter, P, from reunification to adoption.[1] In his sole assignment of error, he asserts that the juvenile court erred in determining that the Department of Human Services (DHS) made reasonable efforts to reunify him with P. We reverse and remand.

In the absence of *de novo* review, which is not requested or warranted in this case, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit" the permanency plan change. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Whether DHS's efforts constitute "reasonable efforts" for purposes of ORS 419B.476(2)(a) is a question of law that we review for legal error. *Dept. of Human Services v. K. G. T.*, 306 Or App 368, 370, 473 P3d 131 (2020).

"[B]efore the court may change a child's plan from reunification to anything else, DHS must prove by a preponderance of the evidence both that (1) DHS made reasonable efforts to make it possible for the child to be reunified with his or her parent, and (2) despite those efforts, the parent's progress was insufficient to make reunification possible." *Id.* at 374. For purposes of ORS 419B.476(2)(a), "reasonable efforts" are those "that focus on ameliorating the adjudicated bases for jurisdiction, and that give parents a reasonable opportunity to demonstrate their ability to adjust their conduct and become minimally adequate parents." *Dept. of Human Services v. W. M.*, 310 Or App 594, 598, 485 P3d 316 (2021) (internal quotation marks omitted).

"The assessment of the reasonableness of DHS's efforts has a temporal component. Although we take into account DHS's efforts over the life of the dependency case, the focus is on the period of time leading up to the permanency hearing. To qualify as reasonable, the efforts must go on long enough to allow for a meaningful assessment of

---

[1] Mother is not a party to this appeal.

whether parents are making sufficient progress to permit reunification."

*Id.* at 598-99 (citations omitted).

We have previously recognized that "[d]ependency cases involving incarcerated parents present unique challenges." *Dept. of Human Services v. S. W.*, 267 Or App 277, 286, 340 P3d 675 (2014). A parent's incarceration does not relieve DHS of its "obligation, over the life of the case, to make reasonable efforts to give the parent the opportunity to ameliorate the bases for jurisdiction." *K. G. T.*, 306 Or App at 376 (internal quotation marks omitted); *see also Dept. of Human Services v. H. K.*, 321 Or App 733, 749, 517 P3d 1044 (2022) (recognizing the challenge presented by the circumstances of that case, which included the COVID-19 pandemic and its associated shutdowns and restrictions, but noting that "institutional barriers do not categorically excuse DHS from meeting its obligation under ORS 419B.476(2)(a), an obligation that includes allowing enough time to give parents a reasonable opportunity to use those efforts to ameliorate the risk of harm to their child caused by the jurisdictional bases" (internal quotation marks omitted)); *S. W.*, 267 Or App at 286 ("mere fact of a parent's incarceration does not excuse DHS from making the reasonable efforts required by statute").

In February 2020, DHS obtained temporary custody of P and she was placed in substitute care; P was approximately 11 months old at that time. In January 2021, the juvenile court entered a judgment asserting jurisdiction over P, based, in part, on father's admissions to three jurisdictional bases: (1) "father has substance abuse issues which need continued treatment," (2) "father is currently on supervision for a conviction of harassment, which occurred in the presence of the child *** [and] needs the assistance of the state to access services to understand the impact this had on the child and to avoid such behavior in the future," and (3) "father is in-custody charged with Manslaughter 2 and is not currently a custodial resource." The court ordered father to engage in drug and alcohol treatment, engage in parent training, attend visits with P, and seek and maintain

employment and safe and stable housing, among other things. In between the time the juvenile court took jurisdiction over P and the permanency hearing in April 2022, father spent time in custody related to various criminal matters and had periods of time when he was out of custody. Notably, father was out of custody from February 2021 through September 2021; he then went back into custody and at the time of the contested permanency hearing, father was incarcerated and awaiting trial on criminal charges that included second-degree manslaughter.

At the conclusion of the permanency hearing, the juvenile court stated, in part, that "DHS has provided some services, although I'm sure they're not enough and ideal, and we would appreciate more services * * *." Ultimately, though, the court found that "the efforts were reasonable as to Father, not ideal, but I find them to be reasonable in light of all of the circumstances that were involved with Father's multiple * * * incarcerations and charges and the other various sundry issues that he was up against." The juvenile court also recognized that the pandemic had likely contributed to the challenges for father.

Father acknowledges that, during the periods when he was out of custody, DHS provided him with services, including attempts to refer him to housing, a drug and alcohol assessment and resulting referral for treatment, a phone, an attempt to set up a parent trainer, bus passes, and visits with P. Father also acknowledges that, except for the visits with P, only some of which he attended, he did not fully engage in the services provided to him. Father's argument on appeal focuses on the months leading up to the permanency hearing. He argues that, between August 2021 and April 2022, DHS did not make reasonable efforts. He asserts, among other things, that the caseworker only had four meetings with him; she did not discuss services with him until the third meeting—in January 2022; she did not refer any services to him; and, upon learning that the jail had one-on-one Alcoholics Anonymous (AA) meetings—after having a conversation with father in which he told her that no meetings or treatment were available due to COVID-19—she did not inform him of the availability

of those meetings.[2] Father also relies on *Dept. of Human Services v. B. A. C. M.*, 319 Or App 267, 508 P3d 999 (2022), and contends that, even if the caseworker had done more, that would not have been sufficient. He points to the COVID-19 pandemic as being largely responsible for his inability to access the necessary services and argues that any change in plan should be delayed to allow him time to access services so there can be a meaningful assessment of his ability to become an adequate parent. *See id.* at 268 ("[I]t appears that the pandemic is largely—if not entirely—responsible for father not being able to access the necessary services.").

In response, DHS argues that the proper analysis should take into consideration its efforts throughout the entire duration of the case based on the particular circumstances of this family, including the bases that brought the child within the juvenile court's jurisdiction. DHS asserts that it was able to, and did, offer father a broad scope of services aimed at addressing each of those bases, despite father's periods of incarceration and the pandemic. Further, according to DHS, the question whether DHS made reasonable efforts depends on whether the services DHS provided afforded the parent a reasonable opportunity to demonstrate that they were capable of becoming a minimally adequate parent, and that father's focus on what DHS did *not* do in the eight months prior to the permanency hearing does not resolve that question. In DHS's view, the totality of its efforts—over the span of almost two years—afforded father a fair opportunity to demonstrate his ability to adjust his conduct and become a minimally adequate parent. Lastly, in regard to father's assertion that the pandemic is largely responsible for father's inability to access services, DHS responds that it was still able to offer father a variety of services throughout the duration of the case despite the fact that the pandemic made providing services more difficult.

After reviewing the record, which we do not recite in detail here, we agree with father that the evidence is insufficient to support the juvenile court's conclusion that

---

[2] The initial DHS permanency caseworker worked on this case from February 2020 until mid-July 2021; a new caseworker was assigned in September 2021 and had her first meeting with father in October 2021.

DHS had engaged in reasonable efforts toward reunification. Although we agree with DHS that reasonable efforts are to be considered over the life of the case, we emphasize the period leading up to the hearing. *W. M.*, 310 Or App at 598. The problem with DHS's argument is that the bulk of the services offered to father was during the time that he was out of custody. From August 2021 to April 2022, the majority of which father was in jail, the caseworker spoke to father four times and sent him two letters of expectation. She spoke to father's jail counselor and put funds in father's account so that father could call her. Father had virtual visits with P, but in-person visits were not allowed at the jail. The caseworker inquired about parent training but was told by the program she contacted that P was too young to do virtual parent skill training; she informed father that, when he was no longer incarcerated, she would provide him with a referral to that training.

We are particularly concerned about the reasonable efforts surrounding father's substance abuse issues, which is one of the jurisdictional bases, and, we understand, also played a role in the criminal charges and incarceration that is one of the other jurisdictional bases. The record does not demonstrate that the caseworker provided any guidance to father on substance abuse services while father was incarcerated. The caseworker failed to relay to father the availability of one-on-one AA meetings. She learned that father, on his own initiative, was engaging in substance abuse treatment in jail but had no follow up with father to communicate with him regarding the suitability of those services. Based on our review of the record, DHS made no affirmative efforts with father on his substance abuse issues during the seven-month period he was incarcerated and leading up to the permanency hearing, despite evidence that father had begun to engage in such services on his own.[3]

---

[3] We do not need to undertake a cost-benefit review in this case to assess whether DHS should have invested in additional substance abuse services that may not have otherwise been available to father for free in jail; nor do we need to balance those potential additional DHS costs against the likely benefit to father in possibly ameliorating the bases for jurisdiction. *See K. G. T.*, 306 Or App at 380-81 (discussing the cost-benefit analysis as applied to incarcerated parents). Here, DHS did not engage in efforts to work with father on those services that were already available to father in prison.

In sum, DHS did not provide services aimed at resolving the jurisdictional bases during the time that father was incarcerated, and, as a practical matter, the only service DHS provided to father during that time was visitation with P. DHS's efforts did not give father a fair opportunity to demonstrate the ability to adjust his behavior and be a minimally adequate parent. We recognize the challenges presented by this case, including the pandemic and father's incarceration. However, under the legal standard articulated above, DHS is not relieved of its obligation to make reasonable efforts because of father's incarceration, and we cannot conclude that DHS met its burden to prove that it made reasonable efforts toward reunification here. We therefore conclude that the juvenile court erred in determining that DHS made reasonable efforts toward reunification and, as a result, erred in changing the permanency plan from reunification to adoption.

Reversed and remanded.