*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

Argued and submitted June 21, affirmed September 7, 2023

In the Matter of A. L.,
aka A. E. L., a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

Z. C.,
*Appellant.*

Umatilla County Circuit Court
21JU03960; A180018 (Control)

In the Matter of R. L.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

Z. C.,
*Appellant.*

Umatilla County Circuit Court
21JU03961; A180019

In the Matter of A. R.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

Z. C.,
*Appellant.*

Umatilla County Circuit Court
21JU03962; A180020

Robert W. Collins, Jr, Judge.

Kyle W. Sessions, Deputy Public Defender, argued the cause for appellant. Also on the brief was Shannon Storey, Chief Defender, Juvenile Appellate Section, Office of Public Defense Services.

Colm Moore, Assistant Attorney General, argued the cause for respondent. Also on the brief were Ellen F. Rosenblum, Attorney General, and Benjamin Gutman, Solicitor General.

Before Shorr, Presiding Judge, and Pagán, Judge, and Kistler, Senior Judge.

SHORR, P. J.

Affirmed.

**SHORR, P. J.**

In this consolidated juvenile dependency case, mother appeals from the judgments changing the permanency plan for her three children from reunification to durable guardianship. Mother challenges the juvenile court's determination that her progress toward reunification was insufficient and asserts that the juvenile court improperly relied on facts extrinsic to the jurisdictional bases in concluding that she had made insufficient progress. We conclude that the trial court did not err and affirm.

Neither party has requested *de novo* review, and this is not the type of "exceptional" case that would warrant it. *See* ORAP 5.40(8)(c). In the absence of *de novo* review, "we view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit" the permanency plan change. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013).

"When the permanency plan at the time of a permanency hearing is reunification, the juvenile court is authorized to change the plan away from reunification only if [the Department of Human Services (DHS)] proves that (1) it made reasonable efforts to make it possible for the child to be reunified with his or her parent and (2) notwithstanding those efforts, the parent's progress was insufficient to make reunification possible." *Dept. of Human Services v. S. M. H.*, 283 Or App 295, 305, 388 P3d 1204 (2017). Whether a parent's progress was sufficient is "evaluated by reference to the facts that formed the bases for [the] juvenile court" asserting jurisdiction. *Dept. of Human Services v. N. T.*, 247 Or App 706, 715, 271 P3d 143 (2012).

DHS became involved with this family in August 2021, following two calls to their hotline reporting threats of harm to the children based on mother's mental health issues, father's criminal history, and father's abuse of mother, and reporting that the youngest child was born with amphetamines and THC in her system. The children were taken into protective custody and placed with their

maternal aunt. Jurisdiction over the children was established in November 2021 following mother's admission to two jurisdictional bases: that both her mental health problems and her substance abuse interfered with her ability to safely parent the children, including admitting that her youngest child tested positive for controlled substances at birth.[1] Mother was ordered to complete an alcohol and drug assessment and follow all recommended treatment; complete a mental health assessment and follow all recommendations; attend parenting classes; sign the necessary releases of information; stay in contact with her DHS caseworker; and complete visitation.

Over the following year, mother completed the substance use assessment, but maintained that she did not have a substance use problem and declined substance abuse treatment. The substance abuse assessment noted that mother had "mental health diagnoses of Bi-Polar I with psychotic features and PTSD." It further observed that her "Bi-Polar I with psychotic features caus[es] her to have grandiose ideas, be disorganized in thought, and lose touch with reality." It concluded that she was at "high risk for relapse due to mental health and interpersonal relationship issues."

Mother completed the initial mental health assessment and attended some counseling sessions, but consistently denied having any mental health problems or needing to engage in counseling. She engaged in some parenting classes and parenting peer mentoring, but was noted to be resistant to the coaching, stating it was logical information everyone knows and she did not need to be told how to parent her children. She attended supervised visitation with her children, but rejected a plan that would have allowed for increased supervised visitation because she did not believe her visits with her children needed to be supervised.

At the October 2022 permanency hearing, DHS requested a change in the permanency plan from reunification to durable guardianship. The juvenile court heard testimony from mother, the DHS caseworker, mother's friend,

---

[1] Father admitted to jurisdiction over the children based on his substance abuse and anger control problems interfering with his ability to safely parent the children. Father is not a party to this appeal.

and the children's paternal grandmother. Among other things, mother testified that her children were in DHS's care because she had relapsed by taking methamphetamine and admitted that her youngest child was born with methamphetamine in her system. Despite that recent history, mother denied needing any substance abuse or mental health treatment.

The court also received exhibits consisting of DHS's family reports, mother's psychological assessments, some counseling records, mother's rental agreement for her newly leased apartment, and mother's urinalysis reports. At the conclusion of the hearing the court granted DHS's motion and changed the children's permanency plans to durable guardianship. In ruling from the bench, the court stated:

> "[Mother] has not completed drug and alcohol treatment as was ordered, nor has she signed ROIs that would allow DHS to have been—had her mental records accessible to her. She's done some modicum of treatment. I mean, she's gone to some meetings, but from what little was read into the record by [DHS's attorney] from those reports, one of her primary focuses appears to have been to make sure that DHS didn't have access to those, and she was going grudgingly and believing she had no mental health issues that needed to be resolved, just as she believed she has no substance abuse issues in need of resolution.

> "She has tested regularly positive for *** marijuana. Marijuana is not methamphetamine, but marijuana is a drug, nonetheless, a mind-altering substance, one that is very much of concern to the court in cases of this kind, just as alcohol, which is also legal, as a mind-altering substance, that can be of grave concern to the court and can result in mental confusion and disorientation and—and a variety of other conditions depending on the level of use, which we have no information on because she has not engaged in drug and alcohol counseling in response to the court's order that she do so.

> "So I would have been much more open to continuing a plan of reunification if Mom came in here with a demonstrated willingness to do what it takes to address the issues that have been raised, acknowledging, you know, that there are problems and that she needs to prove herself in participating actively and completely in—in treatment

both for mental health and alcohol use. She's done neither
of those things."

The court concluded that DHS had made reasonable efforts
toward reunification and that neither parent was in a posi-
tion for the children to be placed with them at that time.

Mother asserts on appeal that DHS failed to meet its
burden to prove that her progress was insufficient to make
reunification possible. She does not challenge the juvenile
court's reasonable efforts determination. She argues that
DHS admitted that it had no information about whether she
could safely parent, and that a silent record necessarily is a
failure of proof. She further argues that she is not required
to agree with DHS's views about her abilities, nor is she
required to engage with DHS's offered services in order to
make progress, and her failure to complete services due to
not thinking she needed them, without more, is insufficient
as a matter of law to prove that her progress was insufficient.
Mother further asserts that the court relied on evidence of
her current living situation being insufficient for the chil-
dren as a factor in concluding that her progress was insuffi-
cient. Because the jurisdictional bases were unrelated to the
adequacy of her housing, mother asserts that that evidence
was extrinsic to the jurisdictional bases and the court was
not permitted to rely on in reaching its conclusion.

We conclude that legally sufficient evidence sup-
ported the juvenile court's determination that mother's prog-
ress was insufficient. Initially, mother admitted the juris-
dictional bases in 2021, acknowledging that her substance
use and mental health interfered with her ability to safely
parent her children. However, despite those admissions, she
has consistently maintained that she does not need sub-
stance abuse treatment, has no mental health problems,
and does not need any guidance or support in parenting her
children. The exhibits demonstrate she has only attended
counseling sessions and mental health assessments because
she is required to do so in order to get her children back,
but has refused to discuss the reasons her children were
removed from her care and has affirmatively denied that
she has any problems that need to be addressed. In light of
her consistent assertion that she has no issues to address,

the logical inference is that her circumstances have not changed since the time she admitted to the jurisdictional bases. As discussed further below, that inference is further supported by the evidence. The court reasonably concluded that she had made insufficient progress.

We disagree with mother's characterization of the record as being silent as to her progress and her ability to safely parent. The record contains, among other things, her testimony, her substance abuse and mental health assessments, a safety report regarding her visitations and interactions with the parent mentor, and her minimal counseling records documenting her resistance to mental health treatment and begrudging attendance at counseling, which largely consisted of her denying that she had any issues to address.[2]

Based on the evidence in the record, we conclude that the juvenile court did not err in determining that mother had made insufficient progress to safely reunite with her children. Despite mother's admissions at the time of jurisdiction that she had serious mental health and substance abuse issues, additional evidence that mother's serious mental health issues cause her to lose touch with reality, and a relatively recent relapse that caused mother to give birth to a child with methamphetamine in the child's system, mother continued to deny the need for *any* mental health or substance abuse assistance. Although it is true that mother has tested positive only for marijuana since her child was born with methamphetamine in her system, there was evidence from which the trial court could conclude that mother, having denied any mental health or substance abuse issues despite strong evidence to the contrary, had not made sufficient progress on her mental health and substance abuse issues that compromised her ability to safely parent and continued to put her at a very high risk of relapse.

With respect to the juvenile court's reference to mother's lease agreement, we conclude that the court did not

---

[2] The record reflects that, at the time the juvenile court ruled from the bench, the court had not yet reviewed all of the treatment records, due to their recent submission. However, portions of the exhibit were discussed during the hearing, and the judgment reflects that the court's decision was based on both testimony and the exhibits.

err. In discussing its findings, the court noted that mother's rental agreement did not allow for more than one occupant, and therefore concluded that mother had not arranged for appropriate housing that was suitable for the children to live in. The court's discussion of that fact does not appear to us to be part of the justification for finding mother's progress to be insufficient. Rather, it appears to be the court resolving a factual issue of whether mother had taken the initial steps to begin the process of returning the children to her home with other safety measures in place. We conclude that the court did not rely on evidence extrinsic to the jurisdictional bases in concluding that mother had made insufficient progress.

Affirmed.