222 November 15, 2023 No. 605

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of M. M. J.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

J. J.,
*Appellant.*

Expedited Juvenile Dependency Case
(Not TPR)

Marion County Circuit Court
22JU03633; A180760

Manuel Perez, Judge.

Submitted August 15, 2023.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Joel C. Duran, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Erica L. Herb, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Chief Judge, and Hellman, Judge, and Armstrong, Senior Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Father appeals a juvenile court order taking jurisdiction over father's then three-year-old child, M. On appeal, father raises three assignments of error: (1) the juvenile court erred in asserting dependency jurisdiction over M because father's mental health interferes with his ability to safely parent M; (2) the juvenile court erred in asserting dependency jurisdiction over M because father's residential instability interferes with his ability to safely parent M; and (3) the juvenile court erred in asserting dependency jurisdiction over M and making him a ward of the court. Father contends that the Department of Human Services (the department) did not meet its burden to prove by a preponderance of competent evidence that father's "purported (or actual) deficits, either individually or collectively," exposed M to a current threat of serious loss or injury that would likely be realized without the juvenile court's intervention through wardship. For the reasons that follow, we affirm.

The juvenile court has dependency jurisdiction in cases involving "a person who is under 18 years of age" and "[w]hose condition or circumstances are such as to endanger the welfare of the person or of others[.]" ORS 419B.100(1)(c). We center our inquiry " 'on the child's conditions or circumstances at the time of the hearing and whether the totality of those circumstances demonstrates a reasonable likelihood of harm to the welfare of the child.' " *Dept. of Human Services v. T. L. H. S.*, 292 Or App 708, 715, 425 P3d 775 (2018) (quoting *Dept. of Human Services v. W. A. C.*, 263 Or App 382, 393, 328 P3d 769 (2014) (emphasis omitted)).

We have reviewed the evidence, "as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition" and conclude that "the record was legally sufficient to permit" the juvenile court's assertion of dependency jurisdiction over M and that the court did not err when it made M a ward of the court. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013); *see also Dept. of Human Services v. Z. M.*, 316 Or App 327, 329, 504 P3d 1208 (2021) (explaining that we "assum[e] the correctness of that court's explicit and

implicit factual findings if any evidence in the record supports them").

The record supports that father was experiencing mental health issues and residential instability at the time of the jurisdictional trial. Father acknowledged that he had been diagnosed in the past with bipolar disorder, for which he stopped taking medication years ago because he could not afford the medication. However, father testified that he did not "have any mental issues, never have, never did[,]" and, at the time of trial, he was not engaged in therapeutic services or medication management for his mental health. Multiple witnesses testified about concerns related to father's erratic and unpredictable behavior, and the court expressed concern, based on father's own testimony, that father had unresolved mental health issues that were impacting his reality and his ability to parent M. Regarding father's residential instability, there is ample evidence that, during M's life, father and M had relocated multiple times and resided in multiple states, including periods in which they stayed in hotels and in father's vehicle. In addition, the record supports that, at the time of the jurisdictional trial, father's mental health and residential instability were interfering with his ability to safely parent and created a "'current and nonspeculative'" risk of harm to M. *Dept. of Human Services v. W. M.*, 303 Or App 384, 390, 463 P3d 572 (2020) (quoting *Dept. of Human Services v. F. Y. D.*, 302 Or App 9, 19, 459 P3d 947 (2020)).

Father contends that the juvenile court "ma[de] the child its ward based on the department's firmly held belief that there is an inherent risk of serious loss or injury to children from a parent's poverty or residential instability or a parent's antipathy towards the department." We disagree. The juvenile court did not mention generalities in its ruling. Instead, the juvenile court's ruling thoroughly demonstrated that its exercise of dependency jurisdiction over M was rooted in a deep understanding of the specifics of father's case, a demonstrated nexus between father's mental health and residential instability, and a current threat of serious loss or injury to M. *T. L. H. S.*, 292 Or App at 714; *see also Dept. of Human Services v. A. R. S.*, 258 Or App 624,

636, 310 P3d 1186 (2013), *rev dismissed*, 354 Or 735 (2014) (explaining that "residential instability is not a sufficient basis for jurisdiction without a showing that it creates a risk of harm to the child").

For example, the record demonstrates that the juvenile court understood the difficult working relationship between father and the department, had taken appropriate steps to facilitate those interactions, and did not fault father for that situation. In addition, the juvenile court recognized that father was a "great parent," and expressed hope that the department could work with father "to get you back with your child as soon as possible in a place that is safe for you and for him." The juvenile court also expressly recognized that father had a right to hold views that some may view as unconventional. However, on the key question before it, the juvenile court found that father's unresolved mental health issues were "affecting his reality" which had negatively impacted his child. That finding was amply supported by the testimony of family members, law enforcement, and department staff who all expressed specific concerns for M's wellbeing under father's care, including that father's frequent moves impacted M's dental care and exposed M to physical harm. In addition, father's own testimony revealed a lack of awareness of the impact that his mental health and housing instability had on M's safety and security, which further supports that father's conduct created a "'current and nonspeculative'" risk of harm to M. *See W. M.*, 303 Or App at 390.

We therefore conclude that the juvenile court did not err when it asserted dependency jurisdiction over M due to father's mental health and residential instability and made M a ward of the court.

Affirmed.