546 June 26, 2024 No. 456

***This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1)***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of A. J. A.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

Y. B.,
*Appellant.*

Marion County Circuit Court
19JU05194; A182852

Tiffany Underwood, Judge.

Submitted May 13, 2024.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Sarah Peterson, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Benjamin Gutman, Solicitor General, and Emily N. Snook, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, Powers, Judge, and Hellman, Judge.

HELLMAN, J.

Affirmed.

**HELLMAN, J.**

Mother appeals a juvenile court judgment that established a guardianship over her five-year-old son A.[1] In her sole assignment of error, mother argues that the Department of Human Services (DHS) did not meet its burden to demonstrate two of the four factors required to establish a guardianship: (1) that A could not be returned to her care within a reasonable time, and (2) that a guardianship was in A's best interests. *See* ORS 419B.366(2), (6). We view the evidence in the light most favorable to the juvenile court's decision and "assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). Under that standard of review, we affirm.

First, the record supports the juvenile court's determination that the progress was not sufficient to allow A to safely return to mother's care within a reasonable time. ORS 419B.366(6)(a). A was removed from mother's care when he was 18 months old, after mother fractured his arm while physically assaulting him. *See Dept. of Human Services v. Y. B.*, 372 Or 133, 136-38, 546 P3d 255 (2024). After A was removed from her care, mother engaged in numerous services and, approximately two years after the initial removal, was permitted a trial reunification with A. That trial reunification lasted only around two weeks, because mother still lacked the ability to safely parent A: She withheld food, locked him in a room and/or locked herself in the bathroom, and tied him up with a jump rope as forms of punishment. *See id.* at 138-39. After A was re-removed, mother again engaged in numerous services. However, she continued to demonstrate parenting deficiencies, including a lack of insight and awareness of the effects of her actions; withholding food as punishment for misbehavior; an inability to apply what she had learned through her services; and

---

[1] We note that in related case, *Dept. of Human Services v. Y. B.*, 372 Or 133, 155, 546 P3d 255 (2024), the Supreme Court affirmed the trial court's April 2022 determination under ORS 419B.476(2) to change the permanency plan for A from reunification to guardianship, concluding that "the facts found by the juvenile court were legally sufficient to support the juvenile court's determination that mother had not made sufficient progress to make possible the safe return of A, either at the time of the hearing or within a reasonable time thereafter."

a rejection of responsibility for the circumstances that led to both of A's removals. Although at the time of the guardianship hearing, mother remained engaged in services and had made some progress, that progress was not sufficient to allow A to safely return to mother's care within a reasonable time.

Second, the record supports the juvenile court's determination that guardianship was in A's best interests. ORS 419B.366(6)(d). We understand mother to argue that because DHS did not prove that A could not return to mother's care within a reasonable time, it also "necessarily failed to prove" that the guardianship served A's best interests. As we have already determined, the record supports the juvenile court's determination that return to mother's care within a reasonable time was not possible. The record further reflects that A was thriving in his current placement, that the resource parents were willing to become A's guardians, and that they were committed to ensuring that A maintained contact with both of his parents, his siblings, and his community. Those facts permitted the juvenile court to determine that a guardianship was in A's best interests.

Affirmed.