182                    June 4, 2025                    No. 519

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. M. S.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

P. I. M.,
*Appellant.*

Jackson County Circuit Court
22JU02777; A185628 (Control)

In the Matter of G. T. W. M.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

P. I. M.,
*Appellant.*

Jackson County Circuit Court
22JU02778; A185629

Charles G. Kochlacs, Judge.

Submitted April 30, 2025.

Aron Perez-Selsky filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Inge D. Wells, Assistant Attorney General, filed the brief for respondent.

Before Tookey, Presiding Judge, Joyce, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this juvenile dependency case, mother appeals and seeks reversal of a judgment establishing a durable guardianship for her children S, who was five at the time of the guardianship hearing, and G, who was nearly seven.[1] Mother raises three assignments of error arguing that there was insufficient evidence to support the court's grant of guardianship. Her arguments are preserved. Determining that the record was legally sufficient to support the juvenile court's ruling, we affirm.

The court took wardship over the children based on mother's admission to jurisdictional allegations that her substance abuse interferes with her ability to safely parent and that she demonstrates symptoms of mental illness, which if left untreated, interfere with her ability to safely parent. The children have been in the care of their paternal aunt and her wife for several years. Mother was ordered to engage in visitation, substance abuse and mental health evaluations and treatment, and parent training. Mother has done so, and all parties, as well as the court, acknowledge that she appears to be making some progress. Nonetheless, there is evidence that she has struggled to maintain consistent sobriety. Approximately one year after jurisdiction was established, the court entered a judgment changing the permanency plans from reunification to guardianship. As part of the permanency hearing, the court made findings that guardianship was in the best interest of the children, and that mother was not making sufficient progress to have the children returned to her within a reasonable time.[2]

---

[1] S's father has never been involved in her life; at the permanency stage, the court found that there is no father with legal rights. G's father is deceased.

[2] In the permanency judgment, the court found that adoption is not appropriate. The court also found that placement with the relative guardian was in the best interest of the children, that ODHS made reasonable efforts to reunify the family, that mother has not made sufficient progress for the children to be safely returned to mother's care within a reasonable time, and that guardianship is in the best interest of the children. To the extent that the court incorporated those findings made at the permanency determination stage into the guardianship determination, the court did not err. *See Dept. of Human Services v. K. H.*, 256 Or App 242, 249-50, 301 P3d 427 (2013), *adh'd to as modified on recons*, 258 Or App 532, 310 P3d 671, *rev den*, 354 Or 699 (2014) ("The juvenile court may grant a motion for guardianship only after the court has approved a permanency plan of guardianship," and the permanency hearing requires some of the same findings

The juvenile court held a two-day hearing regarding the Oregon Department of Human Service's (ODHS) motion to grant guardianship to the aunt. The hearing included testimony from mother, several mental health providers, an ODHS social services specialist, a social worker who observed visitation between mother and her children, and admission of several exhibits. Relevant to this appeal, the ODHS social services specialist testified that, in her opinion, the children are not able to return to mother within a reasonable time period because mother had not been stable, sober and symptom-free for long enough to conclude that the positive changes mother had made were going to last; that the guardians are "suitable" and "willing"; and that guardianship is in the best interest of the children. The ODHS employee also testified that S is "very bonded" with one of the guardians, G is "a bit more squirrelly to nail down, but he definitely wants to stay where he's at" (with the guardians), and that the guardians are willing to do whatever is best for the children. Testimony provided by others reflects that the children are well cared for by the proposed guardians, and although mother has been enthusiastically engaged in treatment, she has tested positive for methamphetamine. An attorney for the children and a court appointed special advocate assigned to them indicated support for the guardianship.

The parties do not request *de novo* review, and this is not an exceptional case warranting such a review. ORS 19.415(3)(b); ORAP 5.40(8). We accept the juvenile court's findings of fact and credibility determinations if any evidence in the record supports them, and we review the evidence "as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the [juvenile] court's disposition," to determine if the record was "legally sufficient to permit" the durable guardianship ruling. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013).

---

required for the granting of guardianship—whether the state has made reasonable efforts, whether the parent has made sufficient progress for safe return of the child within a reasonable time, and that guardianship is in the best interest of the child). Regardless, the record of the guardianship hearing appears to contain—by itself—legally sufficient evidence to support all of the required guardianship determinations.

"The juvenile court may grant a motion for guardianship only after the court has approved a permanency plan of guardianship under ORS 419B.476." *Dept. of Human Services v. K. H.*, 256 Or App 242, 249, 301 P3d 427 (2013), *adh'd to as modified on recons*, 258 Or App 532, 310 P3d 671, *rev den*, 354 Or 699 (2014); ORS 419B.366(6). For a child who is not an Indian child per ORS 419B.636, a court may grant a durable guardianship if, based on a preponderance of evidence and following a hearing, the court determines that:

"(a)  The ward cannot safely return to a parent within a reasonable time;

"(b)  Adoption is not an appropriate plan for the ward;

"(c)  The proposed guardian is suitable to meet the needs of the ward and is willing to accept the duties and authority of a guardian; and

"(d)  Guardianship is in the ward's best interests. In determining whether guardianship is in the ward's best interests, the court shall consider the ward's wishes."

ORS 419B.366(6). During the hearing required by ORS 419B.366 and while ruling on a motion for guardianship, contesting parties should be afforded "the opportunity to be heard at a meaningful time and in a meaningful manner," through a "fundamentally fair" process. *K. H.*, 256 Or App at 253 (internal quotation marks and citation omitted). An order establishing a durable guardianship transfers legal and physical custody of the child to the guardians and dismisses the child's commitment to ODHS. *See* ORS 419B.337(7)(a)(A) (providing that a court may dismiss commitment to ODHS if "a safe alternative to reunification has been implemented"). We note that a durable guardianship plan affords a parent one of the best opportunities to eventually regain care and custody of their children, if they are showing some progress at the time of the permanency hearing. After a guardianship has been ordered, a parent may move to dismiss dependency jurisdiction by arguing that the factual bases for jurisdiction no longer exist, *see Dept. of Human Services v. T. L.*, 279 Or App 673, 684-85, 379 P3d 741 (2016) (describing the two-part inquiry involved in a motion to dismiss dependency jurisdiction), or vacate

the guardianship judgments on the basis that the child can safely return to the parent, ORS 419B.368.

Mother argues that the record lacked child-specific evidence as to what constituted a "reasonable time" before the children could be safely returned to mother, that there was no evidence beyond conclusory statements provided by an ODHS social services specialist to support that the guardians were "suitable," and that the minimal statements from the same ODHS employee regarding why guardianship is in the best interest of the children were legally insufficient. ODHS responds that the court relied on legally sufficient evidence in the record to support its determinations.[3] ODHS argues that the testimony provided by the ODHS social services specialist, mother's pattern of treatment and then relapse resulting in return to methamphetamine use, and the court's ruling from the bench show that ODHS met its burden and that the court did not err.

The juvenile court's ruling from the bench demonstrates that the court was considering information from the permanency judgment about mother and the children, similar to what we deemed allowable in *Dept. of Human Services v. K. H.*, 256 Or App at 247-55. Regarding whether the children can "safely return to [mother] within a reasonable time," ORS 419B.366(6)(a), the court noted that for at least several years, mother has had a pattern of engaging in treatment before relapsing. The court also acknowledged her positive urinalysis test results for methamphetamine *after* mother's reported clean date, and that mother has made "some progress," but that the court is concerned about whether mother will continue to engage with service providers if she is at all challenged by her providers. Testimony provided during the guardianship hearing establishes that those concerns are still active. It is apparent that the court determined that the children could not be safely returned to mother in a "reasonable time" because, at the time of the hearing, she had not yet demonstrated a long enough,

---

[3] Because the permanency judgment was not appealed and we have previously ruled that the trial court can rely on the findings in the permanency judgment, the only finding at issue in the guardianship hearing was whether the guardians are suitable and willing to assume the duties of a guardian.

consistent, and stable period of sobriety and management of her mental well-being.

Regarding ORS 419B.366(6)(c), the suitability and willingness of the guardians, in addition to the conclusory statements by the ODHS employee, the record contains testimony about the resource family providing nutrition and medical care to address the needs of the children; appropriately guiding them through developmental stages such as potty training; and displays of affection between the children and the resource parents.[4] The court determined that the children "are happy and healthy" with the resource family, and regarding ORS 419B.366(6)(d), the court determined that guardianship is in the best interest of the children. Although testimony from the resource family or other providers may have added to the record, such testimony was not required given the evidence that was admitted. Thus, in light of our standard of review, we conclude that the juvenile court did not err.

Affirmed.

---

[4] During the guardianship hearing, mother was asked, "Do you think the resource parents are doing a good job taking care of your children?" and she responded, "Yes."