No. 831          September 24, 2025          579

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of S. D. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.,
*Appellant.*

Malheur County Circuit Court
21JU00609; A187066 (Control)

In the Matter of M. J. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.,
*Appellant.*

Malheur County Circuit Court
21JU00610; A187067

In the Matter of L. J. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*

*v.*

M. J. H.,
*Appellant.*

Malheur County Circuit Court
21JU00611; A187068

Erin K. Landis, Judge.

Submitted August 28, 2025.

Shannon Storey, Chief Defender, Juvenile Appellate Section, and Tiffany Keast, Deputy Public Defender, Oregon Public Defense Commission, filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and E. Nani Apo, Assistant Attorney General, filed the brief for respondent.

Before Lagesen, Presiding Judge, Jacquot, Judge, and O'Connor, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

In this consolidated juvenile dependency case, father appeals from permanency judgments regarding his three children: S, M, and L, who were 11, nine, and eight years old, respectively, at the time of the permanency rulings.[1] Father argues that the juvenile court erred in concluding that the efforts to reunify the family made by the Oregon Department of Human Services (ODHS) qualify as "reasonable." He also asserts that, due to the erroneous "reasonable efforts" determination, the juvenile court erred by changing the permanency plans from reunification to "permanent guardianship."[2] We conclude that the record was legally sufficient to support the juvenile court's rulings, and we affirm.

ODHS removed the children from father's care and filed dependency petitions. The court asserted dependency jurisdiction based on father's admission that his "inability to regulate his emotional responses, including anger and temperament, inappropriate physical discipline and residential instability interfere with [his] ability to safely parent" or "places the child[ren] at risk of harm."[3] The court ordered father to complete a psychological evaluation and follow recommendations, including those related to discipline issues and domestic violence.

Father participated in a psychological evaluation pursuant to ODHS's referral. He was diagnosed with several mental health conditions. The two professionals who evaluated father recommended that he complete a Dialectical Behavior Treatment (DBT) program.[4] He has completed a

---

[1] Mother is not a party to this appeal. The record reflects that the court asserted dependency jurisdiction over the children in response to an admission by mother, as well as the bases as to father described herein.

[2] Although the court's order states that the guardianship will be permanent, that specification is not determinative as to what type of guardianship ODHS or any other party ultimately will petition for, as the parties acknowledge. Rather, the central question at the hearing from which father appeals was whether to change the plan away from reunification and, if so, which of the statutorily enumerated permanency plans to change it to.

[3] At the time of the permanency hearing, the court determined that father had ameliorated any concerns regarding residential instability.

[4] One of the professionals provided testimony that completing a DBT program in a group-oriented setting was "necessary" for father, given the regimented nature of such a program and that group members help develop accountability for each other.

parenting class, completed an anger management program, and participated in counseling services. During the pendency of the case, father moved several times and eventually relocated from Oregon to Tennessee. ODHS determined that there were no DBT providers close to his home in Tennessee. And ODHS determined that although he could participate with those providers via telehealth, doing individual therapy "was better" for father. Father participated in individual therapy in Tennessee and the record indicates that he was continuing to do so at the time of the permanency hearing.

During the several years between the assertion of jurisdiction and the permanency judgments at issue in this appeal, including after his move to Tennessee, father exhibited an inability to regulate his emotions with ODHS staff. His behavior towards ODHS was described as "escalated," including yelling, cursing, and threatening ODHS staff. Father would also become "escalated" during visits with the children and could not become de-escalated, which resulted in some visits ending early. S has refused to participate in many visits due to her father's behaviors and his lack of meaningful apology.

"[A]ppellate courts are bound by the juvenile court's factual findings as to what efforts [O]DHS has made and what actions the parent has taken, so long as there is any evidence in the record to support them * * *."[5] *Dept. of Human Services v. Y. B.*, 372 Or 133, 151, 546 P3d 255 (2024). We review the "reasonable efforts" determination for errors of law. *Dept. of Human Services v. C. H.*, 373 Or 26, 48-49, 559 P3d 395 (2024). We review both the "reasonable efforts" determinations, *id.*, and the guardianship rulings to determine whether the records were "legally sufficient" to support the court's decisions. *Dept. of Human Services v. N. P.*, 257 Or App 633, 639-40, 307 P3d 444 (2013).

Assuming without deciding that father preserved his argument that the efforts made by ODHS do not qualify as "reasonable," we determine that the court did not err

---

[5] Although we have authority to review juvenile dependency matters *de novo*, we do so only in exceptional circumstances. ORS 19.415(3)(b); ORAP 5.40(8). The parties do not request *de novo* review and do not observe any exceptional circumstances making *de novo* review appropriate.

in determining that ODHS did make reasonable efforts. "[P]arents must be given a genuine and fair opportunity to adjust their conduct and become at least minimally adequate parents." *C. H.*, 373 Or at 51. The record reflects that ODHS engaged in efforts to support reunification including providing in-person visits with the children and attempting to provide father feedback about his interactions with the children, providing a referral for a psychological evaluation which father completed, connecting father with several counseling and anger management services in Oregon, and, once father moved to Tennessee, facilitating in-person therapy that incorporated cognitive behavioral therapy (CBT) and DBT principles.

      The record does suggest that an intensive DBT program might provide structure and rigor over a longer duration that—if father participated in actively—may best support him in changing his behavior. However, whether ODHS has provided "reasonable efforts" involves "consider[ation] of the totality of the circumstances ***." *Id*. The record supports the court's determination that "[t]o the extent that [ODHS] was unable to provide services to father[,] that was primarily due to his unwillingness or inability to cooperate and engage with the agency." The court cited father's frequent relocations as a component of what interrupted his services. That ODHS determined that father should participate in in-person therapy rather than telehealth services, given the location father chose to relocate to, does not render ODHS's efforts unreasonable. Given the totality of the circumstances, the record supports the juvenile court's reasonable efforts determination.

      Because the court did not err in determining that ODHS made reasonable efforts, and we do not understand father to raise any other errors regarding the guardianship determinations, the court did not err in changing the permanency plan.

      Affirmed.