No. 351 April 29, 2026 165

***This is a nonprecedential memorandum opinion
pursuant to ORAP 10.30 and may not be cited
except as provided in ORAP 10.30(1).***

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

In the Matter of D. R. H.,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

D. R. H.,
*Respondent,*

*v.*

C. D. H.,
aka C. D. E. H.
*Appellant.*

Umatilla County Circuit Court
22JU04351; A186326 (Control)

In the Matter of D. H. III,
a Child.

DEPARTMENT OF HUMAN SERVICES,
*Petitioner-Respondent,*
*and*

D. H. III,
*Respondent,*

*v.*

C. D. H.,
aka C. D. E. H.,
*Appellant.*

Umatilla County Circuit Court
22JU04352; A186327

Robert W. Collins, Jr., Judge.

Submitted July 28, 2025.

Ron Perez-Selsky filed the brief for appellant.

Dan Rayfield, Attorney General, Benjamin Gutman, Solicitor General, and Patricia G. Rincon, Assistant Attorney General, filed the brief for respondent Department of Human Services.

Ginger Fitch and Youth, Rights & Justice filed brief for respondent children.

Before Aoyagi, Presiding Judge, Egan, Judge, and Pagán, Judge.

AOYAGI, P. J.

Affirmed.

**AOYAGI, P. J.**

In this consolidated juvenile dependency appeal, mother seeks reversal of judgments establishing durable guardianships over her two children—D, born 2017, and C, born 2021—pursuant to ORS 419B.366.[1] Mother raises two assignments of error, one regarding each child. She contends that the juvenile court erred in establishing the guardianships, because the Oregon Department of Human Services (ODHS) failed to prove that the children cannot safely return to mother within a reasonable time. As explained below, we affirm.

*Standard of review.* "In a dependency case in which we do not review *de novo*, we generally review the juvenile court's legal conclusions for errors of law."[2] *Dept. of Human Services v. Y. B.*, 372 Or 133, 136, 546 P3d 255 (2024). "[W]e view the evidence, as supplemented and buttressed by permissible derivative inferences, in the light most favorable to the trial court's disposition and assess whether, when so viewed, the record was legally sufficient to permit that outcome." *Dept. of Human Services v. N. P.*, 257 Or App 633, 639, 307 P3d 444 (2013). In doing so, we are bound by the juvenile court's express and implied findings of historical fact so long as they are supported by any evidence in the record. *Id.*

*Facts.* In November 2022, the juvenile court asserted dependency jurisdiction over the children based on mother's admissions that D suffered an unexplained injury while in mother's custody and that mother's substance abuse interferes with her ability to parent and the court's determinations that father is involved in criminal activities that interfere with his ability to safely parent and that his residential instability and chaotic lifestyle interferes with his ability to safely parent. The court changed the children's permanency plans from reunification to guardianship in December 2023. ODHS then moved to establish a durable guardianship

---

[1] Father did not object to the guardianships and is not a party on appeal.

[2] Discretionary *de novo* review is available in equitable proceedings, ORS 19.415(3)(b), but we will exercise such discretion only in "exceptional cases," ORAP 5.40(8)(c). Mother has not requested *de novo* review, and we do not choose to provide it. We therefore apply the normal standard of review.

for each child. The court held a contested hearing in November 2024. After hearing testimony from mother, father, one of the proposed guardians, and the ODHS permanency worker, the juvenile court ruled that the standard for establishing a durable guardianship for the children was met, including that the children could not be returned to mother within a reasonable time. The court entered judgments establishing a durable guardianship for each child.

*Analysis.* Where the juvenile court has approved a plan of guardianship for a child who is a ward of the court, as was the case here, the court may grant a motion to establish a guardianship if the court determines after a hearing that four criteria are met. ORS 419B.366(6). Those criteria are (1) that the child cannot safely return to a parent within a reasonable time, (2) that adoption is not an appropriate plan for the child, (3) that the proposed guardian is suitable and willing, and (4) that guardianship is in the child's best interests. *Id*. In this appeal, mother challenges the sufficiency of the evidence as to only the first criterion—that the children could not safely return to her within a reasonable time—so we limit our discussion to that issue.

Having carefully reviewed the record and considered the parties' arguments, we agree with ODHS that it was not legal error for the juvenile court to find on this record that the children could not be safely returned to mother within a reasonable time. What time period is "reasonable" depends on the specific child. A "reasonable time" is "a period of time that is reasonable given a child or ward's emotional and developmental needs and ability to form and maintain lasting attachments." ORS 419A.004(27). Here, the juvenile court found that "the patterns of behavior that caused the children to come into care and have kept the children in care for more than two years at this point in time have continued." That finding refers to mother's long-term struggles with substance abuse, which have resulted in harm to the children, and the risk to mother's stability and to the children from mother allowing people who are abusing substances and involved in criminal activity to spend time at her home. The court found that, as acknowledged in her testimony, mother is "more likely to relapse when she's

associating with people who are actively using." The court noted that, according to mother's testimony, she became involved with her current boyfriend and began allowing him to spend two or three nights a week at her home six months before the hearing, at a time when, mother acknowledged, he was actively using. Even if he had since stopped, as mother testified, mother also acknowledged that she questioned his commitment to remaining sober; yet he continued to spend several nights a week at her home and he had no other residence. The court viewed that, along with evidence regarding the presence of mother's friend Kim at her home and her unwillingness to allow the caseworker to view her apartment during an unannounced visit, as indicative that the children could not be safely returned to mother within a reasonable time because the longstanding underlying patterns that had led to harm to the children still existed.

Mother points out that the urinalysis results in evidence do not show recent illicit drug use; that she regularly visits and calls the children and is engaged in family therapy with D; and that she has a home, job, and transportation. In her view, those facts are incompatible with the court's determination that the children cannot safely be returned to her in a reasonable time.

Mother has made admirable progress under very difficult circumstances. However, in light of the court's findings regarding her underlying patterns of behavior, the evidence allowed it to determine that the children cannot safely be returned to her within a reasonable time.

Affirmed.